## COLUMBIA PLAZA CORPORATION et al., Appellants,

### v.

## SECURITY NATIONAL BANK et al.

### No. 73–1919.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1974.

Decided Oct. 10, 1975.

Herbert E. Milstein, Washington, D. C., with whom Jerry S. Cohen and Michael D. Hausfeld, Washington, D. C., were on the brief, for appellants.

Frank F. Roberson, Washington, D. C., with whom William A. Bradford, Jr., Washington, D. C., was on the brief, for appellees.

Before BAZELON, Chief Judge, and ROBINSON and MacKINNON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

■ Appellants,[1] plaintiffs in an action pending against appellees[2] in the District Court for the District of Columbia, moved therein for a preliminary injunction restraining appellees from prosecuting in the District Court for the Southern District of New York a separate action based on matter allegedly required to be asserted as a counterclaim in the District of Columbia lawsuit. The District Court denied the motion,[3] and the propriety of its ruling is the subject of this review. We reverse, concluding that key factors demand litigation of the two actions in a single forum, and demonstrate beyond peradventure that they can most conveniently be litigated in this jurisdiction. We shall describe the circumstances leading to the appeal,[4] discuss the pertinent legal principles,[5] and detail the considerations mandating reversal.[6]

## I.  THE FACTUAL AND PROCEDURAL BACKGROUND

Columbia Plaza Corporation, a wholly-owned subsidiary of John McShain, Inc., held title to a parcel of land in the District of Columbia. In 1970, Columbia Plaza entered into an agreement with some of the defendants in the local suit—the Pomponios[7]—by which the latter would erect an office building on the land and on completion pay Columbia Plaza $5 million for the site. Appellee Royal National Bank, a New York institution, made a commitment for a $13 million construction loan, Columbia Plaza gave Royal a deed of trust as security, and an instrument purportedly signed by McShain guaranteed repayment of the loan. Subsequently, Royal merged with appellee Security National Bank, which like Royal is located in New York.

In August, 1972, the fund derived from the construction loan was about exhausted but the office building was far from finished. McShain charges that inability to complete the building with the initial financing was the result of a conspiracy through which construction monies were diverted to other Pomponio projects[8] or to the conspirators personal-

---

1. Columbia Plaza Corporation and John McShain, Inc. Throughout this opinion, unless the context indicates otherwise, references to "McShain" include both appellants.

2. Security National Bank and Royal National Bank. References to "Security" include both appellees unless the context indicates otherwise.

3. *Columbia Plaza Corp. v. Security Nat'l Bank,* Civ. No. 2027–72 (D.D.C. June 19, 1973). The criteria customarily governing rulings on motions for preliminary injunctions are well defined; probability of the movant's success on the merits and the nature of his injury are prominent considerations. See *Wallace v. Lynn,* 165 U.S.App.D.C. 363, 366, 507 F.2d 1186, 1189 (1974), and cases there cited. In determining whether prosecution of a suit in another forum should be preliminarily en-

joined pending disposition of the action in which the motion is filed, those considerations are of secondary significance. The primary factor to be weighed is the convenience of the parties and the courts. See Parts II, III, *infra.*

4. See Part I, *infra.*

5. See Parts II, III, *infra.*

6. See Part III, *infra.*

7. Included in this group are eight various individuals and two corporations other than Security and Royal. For convenience, we refer to the group by the surname shared by most of the individuals.

8. The details alleged in support of the conspiracy theory, save as subsequently mentioned, are unimportant to the issues presented on this appeal.

ly. To keep the project moving, three short-term notes payable to Security, aggregating nearly $600,000, were executed in McShain's name.[9] Both Security and McShain expected that the construction loan would be increased and McShain was to receive the first $600,000 of the increase for discharge of the notes.[10] Refinancing was never completed, however, for reasons of which we are unaware. McShain now claims that execution of the notes on its behalf was unauthorized and that substantially all of the funds they generated were paid out in furtherance of the conspiracy.

On October 10, 1972, McShain filed suit in the District Court for the District of Columbia to enjoin foreclosure of the deed of trust, to annul the guaranty, and to recover compensatory and punitive damages.[11] McShain's complaint did not expressly refer to the notes, of which two had already matured and the third of which was due six days later. Security sued in a state court in New York on October 18 to recover on the notes.

McShain removed Security's action to the District Court for the Southern District of New York.[12] McShain then made alternative motions to dismiss, stay or transfer that action, contending that its subject matter could be stated only as a compulsory counterclaim in the previously-filed District of Columbia action. The motions were denied and McShain sought a writ of mandamus from the Court of Appeals for the Second Circuit. The petition for the writ was also denied, but the Second Circuit directed the Southern District to stay the New York action for sixty days to permit McShain to move in the District of Columbia to enjoin its prosecution.[13] The court further directed that, if the motion were made, the stay remain in effect until its "final determination." [14]

On February 27, 1973, while the parties were thus engaged on the New York front, McShain filed an amended complaint [15] in the District Court for the District of Columbia. The final two counts of this complaint alleged that the note transaction was drawn into the conspiracy alleged in the original complaint,[16] and sought a permanent injunction against further proceedings in New

---

**9.** McShain allegedly had previously advanced some $760,000 of its own funds.

**10.** A letter from McShain to Security, accompanying the first note stated:

> Upon extension and increase of the building and loan [sic] between your bank and Columbia Plaza Corporation, John McShain, Inc. is to be reimbursed for the amount of this note and interest under the first draw.
> I understand the necessary papers are being processed . . . and will be ready . . . [tomorrow], and that subject to your participant's approval the increased and extended building and loan [sic] in the amount of $17,500,000 will be closed at the earliest opportunity following receipt of the document.

App. at 100. About a week later, in connection with the third note, a letter from Security to McShain said:

> It is understood and hereby confirmed that John McShain, Inc. expects to be reimbursed for its advances to Columbia Plaza under the first draw when, as, and if the construction loan is increased (which presently appears imminent) . . . . .

App. at 117.

**11.** We understand that the deed of trust was subsequently foreclosed.

**12.** See 28 U.S.C. § 1441(a) (1970).

**13.** From this, we believe the Second Circuit has deferred to our decision respecting stay of the New York action. The court expressed no view on the issues relevant to this appeal although the Southern District had found the two actions to be unrelated, and reliance on that finding would plainly be inconsistent with the outcome of the mandamus proceeding in the Second Circuit. Moreover, the Second Circuit has held that principles of comity and estoppel do not preclude a grant of injunctive relief, like that sought by McShain, after an unsuccessful motion for a stay. *Telephonics Corp. v. Lindly & Co.,* 291 F.2d 445, 447 (2d Cir. 1961); *National Equip. Rental, Ltd. v. Fowler,* 287 F.2d 43, 45–46 n. 1 (2d Cir. 1961).

**14.** Thus we are reviewing the District Court's denial of such a motion by McShain, which is protected by the stay remaining in effect pending resolution of this appeal.

**15.** The defendants had not filed a responsive pleading, so McShain had the right to amend its complaint. Fed.R.Civ.P. 15(a).

**16.** Alternatively, McShain alleged that Security was estopped from enforcing the notes as a result of prior conduct.

York. Thus Security was seeking in New York to recover on the notes while at the same time McShain was seeking in the District of Columbia to prevent recovery.

After the ruling in the Southern District, but before the Second Circuit disposed of the mandamus petition, McShain filed in the District of Columbia suit a motion for a preliminary injunction. McShain reasoned that the funds advanced on the notes were directly related to the construction project involved in its original complaint, that the issues in the two cases were identical and arose out of the same transaction, that the New York claim was therefore a compulsory counterclaim, and that prosecution of the New York action should be enjoined because the District of Columbia action was filed earlier. The District Court denied the motions, pointing in its order to several circumstances. The court stated that "although [Federal Civil] Rule 13(a)[17] may authorize one federal court to enjoin a related proceeding in a second federal court, . . . two suits between the same parties on the same cause of action in two different jurisdictions may proceed concurrently. . . ."[18] The court further stated that McShain's motion to transfer the New York action "raised substantially the same questions as are now raised in support of the present motion for preliminary injunction, and that these questions were considered and rejected by the" District Court for the Southern District of New York before McShain moved for the pre-liminary injunction.[19] The court deemed significant the fact that the issues on which the motion was based were tendered by amendment only after the New York action was filed,[20] and felt "that the three notes, not having been included in the original complaint, may have been considered to form the basis of a separate claim. . . ."[21] The court made no express finding as to whether, within the meaning of Rule 13(a), the execution of the notes was part of the same "transaction or occurrence" involved in McShain's original complaint.[22]

## II. THE COUNTERCLAIM ISSUE

McShain argues that the three short-term notes were executed as a part of the transaction embracing the original construction loan, and that therefore the critical issue in the New York action—the enforceability of those notes—is properly the subject of a compulsory counterclaim in the District of Columbia action, which challenges various aspects of the loan. That the notes were not mentioned until McShain filed the amended complaint is irrelevant, we are told, because for purposes of Rule 13(a) the "transaction or occurrence"[23] implicated by an original complaint need not be fully defined by the facts alleged therein. McShain thus concludes that the District Court was required to enjoin further prosecution of the New York action. Security's response is that the subject matter of that action was never a part of the construction-financing transaction[24] addressed by the original complaint in the District of Columbia.

---

17. Fed.R.Civ.P. 13(a), quoted in relevant part text *infra* at note 24.

18. *App.* 208 (*citations omitted*). *For support for the second proposition, the court relied on* Speed Prods. Co. v. Tinnerman Prods., Inc., *83 U.S.App.D.C. 243, 171 F.2d 727 (1948). This reliance was misplaced. See note 55, infra.*

19. App. 208. The court's ruling preceded the Second Circuit's disposition of the mandamus petition. For reasons already stated, the court might not have relied on this circumstance if it had had the benefit of the Second Circuit's decision. See note 13, *supra*.

20. *Id.* at 209.

21. *Id.*

22. See text *infra* at note 24.

23. See text *infra* at note 25.

24. Appellees seem to define the scope of the term "transaction" by inquiring as to whether a judgment on the original complaint would be res judicata in the New York action. Although this test may be helpful in some cases, it is too limited for use in many instances, including the case at bar. See 6 C. Wright &

Federal Civil Rule 13(a) provides in relevant part that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." [25] The purpose of the rule is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." [26] The Supreme Court has given the operative term "transaction" [27] a broad definition:

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. . . . Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all

particulars, the same as those constituting the defendant's counterclaim.[28]

■ Consequently, in determining whether the New York subject matter is properly a compulsory counterclaim in the District of Columbia suit, we must assess the degree of "logical relationship" between the two actions.[29] We must also remain mindful that the term "transaction" is to be construed generously to avoid the unnecessary expense inherent in multiplicious litigation.[30]

McShain allegedly executed the three notes sued on in New York for the sole purpose of avoiding a shutdown of a construction project. That project was the erection of the same office building involved in the original complaint. Furthermore, when the notes were executed, the parties allegedly expected that the original loan for construction of the building would be increased to provide the funds for payment of the notes.[31] The notes were thus related to an anticipated enlargement of the original loan financing the project, and the District of Columbia action was filed to secure adjudication of the consequences of a number of events associated with that loan. Additionally, the nature of McShain's factual claims in the two actions indicates strongly that the evidence offered to support them is likely to be substantially identical.[32]

A. Miller, Federal Practice & Procedure § 1410, at 45 (1971). See also note 32, *infra*.

**25.** Fed.R.Civ.P. 13(a). Two exceptions are stated, only one of which is at all pertinent to the case at bar. See text *infra* at notes 38–42.

**26.** *Southern Constr. Co. v. United States ex rel. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31, 34 (1962).

**27.** There is no claim that the subject matters of the two actions are part of the same "occurrence." *Cf. Williams v. Robinson*, 1 F.R.D. 211, 213 (D.D.C.1940).

**28.** *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, 757 (1926).

**29.** *Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970); *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961); 3 J. Moore, Federal Practice ¶ 13.13, at 13–302 (1974); 6 C. Wright & A. Miller, Federal Practice & Procedure § 1410, at 46–48 (1971).

**30.** See *Southern Constr. Co. v. United States ex rel. Pickard, supra* note 26, 371 U.S. at 60, 83 S.Ct. at 110, 9 L.Ed.2d at 34; *United States v. Heyward-Robinson Co.*, 430 F.2d 1077, 1081 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959); 3 J. Moore, Federal Practice ¶ 13.13, at 13–300 (1974).

**31.** See note 10, *supra*.

**32.** In some cases it might be unjust to hold that a particular claim is barred by the doctrine of res judicata, as where a plaintiff not unreasonably has failed to anticipate a defense and therefore has not recognized the need to file a counterclaim in an earlier action. See 6 C. Wright & A. Miller, Federal Practice & Procedure § 1410, at 54 (1971). The issue is not presented by the instant case, however. On remand, Security will be aware of the need to seek recovery on the notes in the District of Columbia action.

■ In these circumstances, we cannot agree with the District Court that the two matters could appropriately be addressed in different courts.[33] An adjudication pursuant to Rule 13(a) that two actions are parts of a single controversy should lead to resolution of both in a single forum. Sound judicial administration counsels against separate proceedings,[34] and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.[35] Rule 13(a), by compelling a counterclaim in such instances unless an exception applies, limits consideration of matters encompassed in one transaction to one court. Here the same issues, and apparently to a large extent the same evidence, will be considered in both actions,[36] and two proceedings could duplicate discovery. We take note of crowded court dockets across the country, and the consequent desirability of deciding common issues in one tribunal rather than two. We also note, in addition to economic factors, the value of eliminating the risk of inconsistent adjudications and races to obtain judgments.[37] We hold that the District Court erred in ruling, without reference to the common origin of the two actions involved here, that they could be pursued in two courts.

■ We are advertent to the fact that Rule 13(a) has exceptions, and that one is invoked by Security's argument that the District Court properly denied McShain's motion for an injunction because the New York action was instituted first.[38] The basis for this assertion is the absence of any mention of the notes in McShain's original complaint, and the filing of the New York action prior to presentation of McShain's amended complaint specifically referring to the notes. McShain responds that the amended complaint relates back to the original complaint pursuant to Rule 15(c),[39] thus acquiring its filing date, and on this theory urges that the District of Columbia was the first jurisdiction in which the issues relating to the notes were raised. Assuming without deciding that express reference to the notes was in any event essential,[40] the applicability of Rule 15(c)'s provision governing relation back depends upon whether the two pleadings relate to the same transaction.[41] Our determination on that score[42] fully sustains McShain's position.

## III. THE INJUNCTION ISSUE

That Rule 13(a) calls for assertion of the New York cause of action as a counterclaim to the District of Columbia

---

**33.** See text *supra* at notes 17–22.

**34.** See text *supra* at note 26.

**35.** See note 30, *supra*, and accompanying text. See also *Great Lakes Rubber Corp. v. Herbert Cooper, Inc., supra* note 29, 286 F.2d at 634; *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir.), *cert. denied*, 315 U.S. 831, 62 S.Ct. 913, 86 L.Ed. 1224 (1941); *Martin v. Graybar Elec. Co., supra* note 30, 266 F.2d at 204.

**36.** See *Food Fair Stores, Inc. v. Square Deal Market, Inc.*, 88 U.S.App.D.C. 176, 177, 187 F.2d 219, 220 (1954); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 (2d Cir. 1965), *cert. dismissed*, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966); *Remington Prods. Corp. v. American Aerovap, Inc.*, 192 F.2d 872, 873 (2d Cir. 1951); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971).

**37.** See *Crosley Corp. v. Hazeltine Corp., supra* note 35, 122 F.2d at 930; *ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967), *cert.*

*denied*, 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968); *Martin v. Graybar Elec. Co., supra* note 30, 266 F.2d at 204.

**38.** Fed.R.Civ.P. 13(a) specifies in part that "the pleader need not state the claim if . . . at the time the action was commenced the claim *was the subject of another pending action. . . ."*

**39.** "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Fed.R.Civ.P. 15(c).

**40.** See discussion in text *supra* at notes 27–30. Surely a plaintiff need not particularize in his complaint the factual foundation for his adversary's counterclaim.

**41.** See *Mattel, Inc. v. Louis Marx & Co., supra* note 36, 353 F.2d at 424.

**42.** See text *supra* at notes 25–37.

cause of action does not fully answer the question whether the District Court here should have awarded McShain an injunction. Stated otherwise, that only one court should consider the two causes of action obviously does not ipso facto determine which court should do so. To be sure, the District of Columbia court could achieve Rule 13(a)'s single-suit objective by restraining Security from going forward in New York,[43] as the New York court might itself have done.[44] But the goals underlying Rule 13(a)[45] would likewise be realized should either court transfer the cause of action pending before it to the other.[46] Indeed, the latter procedure would assure, beyond confinement of the litigation to one forum, the selection more convenient to the parties and to the courts, and more consonant with the overall interests of justice.[47]

■ Thus we are confronted by the need to decide which of the two courts should handle the two claims the rest of the way. Both parties have urged us to meet this need by invocation of an asserted general rule that the court first acquiring jurisdiction of a controversy should enjoin subsequent proceedings thereon in other jurisdictions.[48] In our view, however, choice of the forum cannot be suitably made by mechanical application of that principle. The opinions recognizing the rule have frequently contained a caveat that it should be ignored under some circumstances,[49] and in a good many cases proceedings in an earlier-filed action have been stayed to enable the court later acquiring jurisdiction to proceed to judgment first.[50] We do not regard an injunction favoring the first-filed action as a mandatory step in all instances because countervailing equitable considerations, where present, cannot be ignored.

■ The Supreme Court, in discussing the problem of multiplicity of litigation arising from passage of the Declaratory Judgment Act,[51] has admonished that

> [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solutions of such problems. The factors relevant to wise administration here are equitable in nature.[52]

**43.** See *National Equip. Rental, Ltd. v. Fowler,* supra note 13, 287 F.2d at 45, and cases there cited.

**44.** See *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1202 (2d Cir. 1970); *Leonard F. Fellman Co. v. Smith-Corona Marchant, Inc.,* 27 F.R.D. 263, 264 (E.D.Pa.1961). Alternatively, that court might have dismissed the claim with leave to present it in the prior action. See *E. J. Korvette Co. v. Parker Pen Co.,* 17 F.R.D. 267, 269 (S.D.N.Y.1955).

**45.** Rule 13(a) alone could not sustain an injunction by the New York court of proceedings in the District of Columbia court since, as we have held, the overlapped claim was first filed in the latter. See note 38, *supra.*

**46.** "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1970).

**47.** See note 46, *supra.*

**48.** See *Food Fair Stores, Inc. v. Square Deal Market Co.,* supra note 36, 88 U.S.App.D.C. at 177, 187 F.2d at 220; *Speed Prods. Co. v. Tin-* nerman Prods., Inc. supra note 18, 83 U.S.App.D.C. at 245, 171 F.2d at 729; *National Equip. Rental, Ltd. v. Fowler,* supra note 13, 287 F.2d at 45; *Crosley Corp. v. Hazeltine Corp.,* supra note 35, 122 F.2d at 930; *Martin v. Graybar Elec. Co.,* supra note 30, 266 F.2d at 204.

**49.** *E. g., Semmes Motors, Inc. v. Ford Motor Co.,* supra note 44, 429 F.2d at 1202; *Mattel, Inc. v. Louis Marx & Co.,* supra note 36, 353 F.2d at 424; *Martin v. Graybar Elec. Co.,* supra note 30, 266 F.2d at 203–204; *United Fruit Co. v. Standard Fruit & Steamship Co.,* supra note 43, 282 F.Supp. at 340.

**50.** *E. g., William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177 (2d Cir. 1969); *ACF Indus., Inc. v. Guinn,* supra note 37, 384 F.2d at 19–20; *Polaroid Corp. v. Casselman,* 213 F.Supp. 379 (S.D.N.Y.1962); *Sentry Corp. v. Conal Int'l Corp.,* 164 F.Supp. 770 (S.D.N.Y. 1958). See also *Lucerne Prods., Inc. v. Skil Corp.,* 441 F.2d 1127 (6th Cir. 1971).

**51.** 28 U.S.C. §§ 2201, 2202 (1970).

**52.** *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200, 203 (1952).

We think the same consideration obtains here. It is not enough to undertake merely the task of inquiring into the applicability of relevant provisions of the Civil Rules and end the effort at that point.[53] A much sounder approach has been articulated:

> The problem of whether to enjoin another action involving the same parties and issues . . . cannot be solved by blind application of a mechanical "rule of thumb." Rather, its solution requires a balancing not of empty priorities but of equitable considerations genuinely relevant to the ends of justice.[54]

So, although we have concluded that the subject matter of the New York action relates to the same transaction underlying the District of Columbia action, justification for the decision on McShain's motion to enjoin the New York action must be found in the significance of the equitable factors, to which we now turn.

All parties to the construction loan transaction are before the court in the District of Columbia action,[55] while the New York action engages only Security and McShain.[56] The witnesses, other than bank personnel apparently are in or near the District of Columbia, and if so are not subject to subpoenas emanating from New York.[57] It would seem unfair to force McShain to engage New York counsel additional to retained local counsel already familiar with the controversy.[58]

Moreover, at the time the District Court denied McShain's motion for preliminary injunction, extensive proceedings in the District of Columbia action had taken place, while the New York action had advanced no further than removal and consideration of a motion for stay. These facts denote the likelihood that the New York claim can be more expeditiously determined in the action pending in the District of Columbia.[59] Transfer of the more ponderous District of Columbia litigation to New York would hardly be more advantageous than

---

**53.** We note that the Court did considerably more in *Kerotest. Id.* at 186 n. 6, 72 S.Ct. at 222 n. 6, 96 L.Ed. at 204 n. 6. See also *Mann Mfg., Inc. v. Hortex, Inc., supra* note 36, 439 F.2d at 407–408. But see *Speed Prods. Co. v. Tinnerman Prods., Inc., supra* note 18; *Cresta Blanca Wine Co. v. Eastern Wine Corp.,* 143 F.2d 1012 (2d Cir. 1944).

**54.** *Polaroid Corp. v. Casselman, supra* note 50, 213 F.Supp. at 381. See also *Small v. Wageman,* 291 F.2d 734, 736 (1st Cir. 1961) (". . problems of multiple litigation in the federal judicial system are not to be solved by rote.").

**55.** This factor distinguishes *Speed Prods. Co. v. Tinnerman Prods., Inc., supra* note 18. In that case, Speed filed an action in the District of Columbia against the Patent Office and later an action in New York against Tinnerman. The latter than intervened in the District of Columbia litigation. This court held that the New York action should not be enjoined because that action was the first in which Tinnerman was present as a party. See *id.* at 246, 171 F.2d at 730. It was this holding that led the District Court to decide in the instant case that separate proceedings on the same cause of action could proceed concurrently, note 18, *supra,* and accompanying text, a faulty conclusion because Security has always been a party to both actions. Moreover, the

approach reflected in *Speed* may need reexamination in light of the Supreme Court's later decision in *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co., supra* note 52. See text and notes *supra* at notes 52–54.

**56.** See *Food Fair Stores, Inc. v. Square Deal Market, Inc., supra* note 36, 88 U.S.App.D.C. at 177, 187 F.2d at 220; *William Gluckin & Co. v. International Playtex Corp., supra* note 50, 407 F.2d at 180; *Mattel, Inc. v. Louis Marx & Co., supra* note 36, 353 F.2d at 424.

**57.** See Fed.R.Civ.P. 45(e)(1). See also *William Gluckin & Co. v. International Playtex Corp., supra* note 50, 407 F.2d at 180; *ACF Indus., Inc. v. Guinn, supra* note 37, 384 F.2d at 19; *Polaroid Corp. v. Casselman,. supra* note 50, 213 F.Supp. at 382.

**58.** See *William Gluckin & Co. v. International Playtex Corp., supra* note 50, 407 F.2d at 180; *Polaroid Corp. v. Casselman, supra* note 50, 213 F.Supp. at 382; *Aamco Automatic Transmissions, Inc. v. McAlpine,* 391 F.Supp. 302, 305 (E.D.Pa.1975).

**59.** See *ACF Indus., Inc. v. Guinn, supra* note 37, 384 F.2d at 19; *Lucerne Prods., Inc. v. Skil Corp., supra* note 37, 441 F.2d at 1128; *Polaroid Corp. v. Casselman, supra* note 50, 213 F.Supp. at 382.

resolution of the issues concerning the three notes in the District of Columbia.[60]

Security argues that the equities are in its favor because, it says, the "relatively simple" action on the notes should not be litigated in the wider-ranging action in the District of Columbia. This assertion is vigorously disputed by McShain, and rightly so. A number of the issues raised in the District of Columbia action have been interposed in defense of the New York action. We perceive no reason for believing that Security's claim will be adjudicated earlier or more easily in New York. If Security's case is as simple as it says, it need not become bogged down in the more complex case which McShain has brought in this jurisdiction. The District Court has at its command a variety of procedural devices designed to expedite the decision of uncomplicated issues.

## IV. DISPOSITION

We reverse the District Court's order denying the preliminary injunction because all pertinent factors demonstrate combinationally that the two actions should be tried together,[61] and that they can best be jointly considered in the District of Columbia.[62] We regard this conclusion as totally consistent with the purpose of Rule 13(a)—to avoid unnecessary multiplication of litigation.[63] We remand the case to the District Court with direction to enjoin Security from prosecuting the New York action[64] until the final determination of the District of Columbia action, including disposition of any appeal.[65]

So ordered.

---

60. In this view, we need not consider whether in any event the governing criteria would permit a transfer from the District of Columbia to New York. See note 46, *supra*.

61. Part II, *supra*.

62. Part III, *supra*.

63. *Southern Constr. Co. v. United States ex rel. Pickard, supra* note 26, 371 U.S. at 60, 83 S.Ct. at 110, 9 L.Ed.2d at 34; *Chicago Freight Car Leasing Co. v. Martin Marietta Corp.,* 66 F.R.D. 400, 402 (E.D.Ill.1975).

64. Security contends that an injunction would violate 28 U.S.C. § 2283 (1970) because the New York action was originally filed in a state court. See text *supra* at note 12. Security submits as direct authority for its position *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896 (2d Cir. 1924). In that case, the court held that an injunction against further proceedings in an action removed to the Northern District of California after original filing in a state court violated the forerunner of § 2283. *Higgins* is plainly distinguishable, however, because there the case was properly removable only to the *Southern* District of California. *Id.* at 897. See 28 U.S.C. § 1441(a) (1970). At the time the injunction there issued, the plaintiff had not lost the right to seek a remand to the state court on the ground that removal to the Northern District was improper, and the rationale of the ruling on the injunction was that the statute forbade it as long as the plaintiff retained that right. *Id.* at 898. Since there is no claim on this appeal that the New York action was not properly removed, we see no conflict between our result and either *Higgins* or § 2283.

65. Security should be granted leave to amend its answer to add a counterclaim for recovery on the notes. Alternatively, the New York action could be transferred to this jurisdiction and consolidated with the District of Columbia action. We perceive no practical difference between these two procedures, and we intimate no preference. See text *supra* at notes 43–47.