SUPERIOR SAVINGS ASSOCIATION, Plaintiff,

v.

BANK OF DALLAS, et al., Defendants.

Civ. A. No. CA 3–87–2055–G.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 2, 1989.

D. Grant Seabolt, Jr., D. Ronald Reneker, Bird & Reneker, Dallas, Tex., Robert J. Fogarty, Hahn Loeser & Parks, Cleveland, Ohio, for plaintiff.

William T. Hankinson, Thompson & Knight, Ernest E. Figari, Jr., Donald Colleluori, Figari & Davenport, Alan B. Rich, Johnson & Swanson, George M. Kryder, III, Vikram Chandhok, Carrington Coleman Sloman & Blumenthal, Dallas, Tex., for defendants.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the defendants' application for a preliminary injunction against the prosecution by Superior Savings Association ("Superior") of concurrent litigation pending in the United States District Court in Cleveland, Ohio ("the Ohio case").[1] After consideration of all submissions, the court is of the opinion that the application should be denied.[2]

### I. Background

Superior is an Ohio savings and loan association. On July 21, 1987, it obtained a judgment in the United States District Court for the Northern District of Ohio against Hillcrest Equities, Inc. ("Hillcrest") as the result of Hillcrest's default on its unconditional guarantee of a $4,000,000 chattel mortgage note. *See* exhibit to affidavit of D. Grant Seabolt, Jr. in support of application for writ of garnishment in CA 3-87-2755-G.

In August 1987, Superior registered the Ohio judgment with the clerk of this court. *See* 28 U.S.C. § 1963. It then brought these various applications for post-judgment writs of garnishment, which have been consolidated here, to collect the judgment against Hillcrest. *See* Rule 69(a), F.R.Civ.P.; Texas Civ.Prac. and Rem.Code §§ 63.001–63.005; Rules 657–679, Texas R.Civ.P. Generally, Superior alleges in these actions that Hillcrest entered into certain "minimum nonrefundable fee agreements" with the garnishees. *See* Superior's brief in opposition to application for preliminary injunction at 3.

---

1. *Superior Savings Association v. Davis, Meadows, Owens, Collier & Zachry; Haynes & Boone; Hughes & Luce; Johnson & Swanson, P.C.; Grand & Ostrow; and Paul L. Perito, Esq.,* Case No. C–88–3674, filed on September 28, 1988 in the United States District Court for the Northern District of Ohio, Eastern Division.

2. This memorandum order will constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

Suing in Hillcrest's shoes, Superior seeks to garnish "unused fees" held by the law firm-garnishees, i.e., "that portion of the fees in return for which the [garnishees] had not rendered legal services to Hillcrest at their normal hourly rates as of the dates Writs of Garnishment were served upon them." *Id.* To reach the "unused fees," [3] Superior—by a cross-motion for summary judgment—has attacked the "non-refundable" provisions of the fee agreements as being in violation of public policy and thus void and unenforceable. *See* Superior's brief in support of cross-motion for summary judgment at 16–29. Among the public policies cited is that "against prejudicing the rights of a failing corporation's creditors." *Id.* at 23.

After the first of these garnishment actions had been pending for more than a year, Superior brought the Ohio case against five law firms and an individual lawyer alleging (1) a conspiracy to hinder, delay or defraud Hillcrest's creditors and (2) fraudulent conveyances in violation of Texas law. *See* Superior's original complaint in the Ohio case. Three of the defendant law firms in that action (Davis, Meadows, Owens, Collier & Zachry; Hughes & Luce; and Johnson & Swanson) are garnishees in these actions.[4]

In the Ohio case, Superior seeks to recover not only unused fees but *all* fees conveyed by Hillcrest to the garnishees, as well as punitive damages. *Id.* *See* Superior's brief in opposition to defendants' application for preliminary injunction at 5.

**3.** This characterization of these garnishment actions as an effort to reach "unused fees" is apparent only from Superior's response to the application under consideration and its own cross-motion for summary judgment. It is not apparent from Superior's various applications for writ of garnishment.

**4.** Haynes & Boone informed this court by letter dated November 4, 1988 that it had reached a settlement with Superior. The law firm of Grand & Ostrow and attorney Paul Perito, the remaining defendants in the Ohio case, are not parties to these garnishment proceedings.

**5.** In most cases, a movant for preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that irreparable injury will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the non-movant; and (4) granting the injunction is not ad-

## II. Analysis

In deciding whether Superior should be enjoined from prosecuting the Ohio case, the customary rules governing the grant of injunctive relief are of "secondary significance." [5] *Columbia Plaza Corporation v. Security National Bank*, 525 F.2d 620, 622 n. 3 (D.C.Cir.1975), *cited with approval, West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 732 (5th Cir.1985). *See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). *See also Schauss v. Metals Depository Corporation*, 757 F.2d 649, 654 (5th Cir.1985); *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407–08 (5th Cir.1971). Instead, the primary consideration is the convenience of the parties and the courts. *Columbia Plaza Corporation*, above, 525 F.2d at 622 n. 3.

Although "no precise rule has evolved, the general principle [as to concurrent federal court actions] is to avoid duplicative litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed. 2d 483 (1976) (citing *Kerotest Mfg.*, above, 342 U.S. at 183, 72 S.Ct. at 221; *Steelman v. All Continent Corp.*, 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937); and *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936)).

In the Fifth Circuit, this situation presents two functional inquiries: (1) are the two pending actions so duplicative that one court should decide the subject matter

verse to the public interest. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985); *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). The decision to grant or deny a preliminary injunction is left to the sound discretion of the district court. A preliminary injunction is an extraordinary remedy which should only be granted if the movant has carried his burden of persuasion on all of the four factors. *Mississippi Power & Light*, above, 760 F.2d at 621.

In this case, movants have made no attempt to argue each factor. They rely wholly on the two functional inquiries set forth below. Although the usual preliminary injunction factors are secondary in a case such as this, they are not *irrelevant,* and the court is cognizant of this,

of both actions; and if so, (2) which of the two courts should take the case? *Columbia Plaza Corporation,* above, 525 F.2d at 628–29; *Mann Manufacturing, Inc.,* above, 439 F.2d at 407–08.

A. *Are The Two Actions Duplicative?*

■ Concurrent actions pending in different federal courts are duplicative for the purpose of staying one action in favor of the other [6] when the overall content of each suit is not very capable of independent development, and will be likely "to overlap to a substantial degree." *Mann Manufacturing, Inc.,* 439 F.2d at 407 and 408 n. 6. This standard requires an "actual substantial overlap" or a "common subject matter" between the two cases. *Id.* at 407–08. Overlap of both evidentiary and factual issues are relevant, and the cases need not be identical to be duplicative. *Id.* at 407. *See West Gulf Maritime Association,* above, 751 F.2d at 729 ("closely related"). Federal courts try to avoid such duplication of effort (1) to avoid waste; (2) to avoid making rulings "which may trench on the authority of sister courts;" and (3) to avoid "piecemeal resolution of issues that call for a uniform result." *Id.* at 728–29.

■ This action and the Ohio case are related, but not closely. There is some overlap, but it is not substantial. As to legal issues, there is a fairly bright line between the two cases. Superior has stated the legal differences plainly:

> as well as the defendants' burden of proof, in denying the application. *See West Gulf Maritime Association v. ILA Deep Sea Local 24,* 751 F.2d 721, 731 (5th Cir.1985).

6. Whether the two courts avoid duplication by injunction, stay, dismissal or transfer, *see West Gulf Maritime Association,* above, 751 F.2d at 730, the same goal is achieved: avoidance of wasteful expenditure of judicial resources and the risk of inconsistent adjudications. *See Blessing v. Norman,* 646 F.Supp. 82, 84 (N.D.Ga. 1986).

7. As it does in this action. *Beggs v. Fite,* 106 S.W.2d 1039, 1042 (Tex.1937); *Pearson Grain Company v. Plains Trucking Company, Inc.,* 494 S.W.2d 639, 641 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). *See San Felipe National Bank v. Caton,* 668 S.W.2d 804, 805 (Tex.App.—Houston [14 Dist.] 1984, no writ).

8. *See also Chandler v. Cashway Building Materials, Inc.,* 584 S.W.2d 950, 953 (Tex.Civ.App.—El Paso 1979, no writ).

In contrast to the … [garnishment] proceedings before this Court, Superior's causes of action [i.e., for fraudulent conveyance and conspiracy to defraud Hillcrest's creditors] in the [Ohio case] are brought in its own right and, indeed, could not have been brought by Hillcrest. Superior does not stand in Hillcrest's shoes in the [Ohio case]; [7] its right to recover in that action is not dependent on whether the defendants in that action, including the [garnishees here], owe debts to Hillcrest.

\* \* \* \* \* \*

The fundamental [legal] differences between this proceeding and the [Ohio case] can best be expressed in the negative. For Superior to prevail in this proceeding, it is *not* necessary to find that the payments to [the garnishees] were fraudulent or that there was a conspiracy. *See Archer v. State,* 548 S.W.2d 71, 73 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).[8] … Conversely, for Superior to prevail in the [Ohio case], it need not establish that Hillcrest has a right to claim the funds in question. Indeed, Hillcrest is alleged to have been a party to the fraudulent conveyances and conspiracy.[9]

Superior's brief in opposition to defendants' application for preliminary injunction at

9. *See* Superior's original complaint in the Ohio case. Of course, Superior could have brought its claim for fraudulent conveyance under Fed. R.Civ.P. 18. 6 C. Wright and A. Miller, Federal Practice and Procedure §§ 1591–92 (1971 ed. and Supp.1988). Also, because Superior brings these garnishment actions in Hillcrest's shoes, it would have had to "join itself" as a party, for the purpose of the fraudulent conveyance action, under Fed.R.Civ.P. 20(a). This would not have been difficult, since the "transaction" which forms the basis for these actions is within the broader transaction that forms the basis for the fraudulent conveyance action, that is, the original judgment against Hillcrest, and Hillcrest's conveyances of its assets to the garnishee-law firms before and after that judgment was rendered. *See* Superior's cross-motion for summary judgment at 2–7; Superior's original complaint in the Ohio case.

As to Superior's fifth claim for relief in the Ohio case, there is Texas authority that would permit Superior to bring such a claim to this

5–6 (emphasis in original) (footnotes added).

The court is thus left with the factual overlap between these cases. The factual issues to be determined in a garnishment action are dictated by statute and court rule. The only real issues are whether the garnishees were indebted to Hillcrest or had in their possession effects belonging to Hillcrest at the time of the service of the writs and filing of the answers. *Chandler*, 584 S.W.2d at 953.

That statement is deceptively simple, however, when applied to the facts of these garnishment actions. To determine what debt, if any, the garnishee-law firms owed to Hillcrest, Superior has attacked the non-refundable fee arrangements as contracts that are void and unenforceable as against public policy. Superior's cross-motion for summary judgment at 16–19. Only one of the five public policies relied on by Superior will require the presentation of evidence relating to the Ohio case: the "public policy against prejudicing the rights of a failing Corporation's creditors." Superior's brief in support of cross-motion for summary judgment at 23. In support of this policy argument, and also to prove how and under what circumstances the law firms received the funds in the first place, Superior has alleged as "undisputed facts" most of the material allegations of fact it made in the Ohio case. *Compare* Superior's cross-motion for summary judgment at 2–7 and its brief in support of cross-motion for summary judgment at 3–12 *with* its original complaint in the Ohio case. The garnishees have disputed these allegations and all parties have submitted voluminous evidentiary attachments.

The facts which are the subject of the Ohio case are of marginal or no relevance to these garnishment actions. Superior's theory of the public policy against prejudicing the rights of a failing corporation's creditors is based on an *analogy* between garnishment and 11 U.S.C. § 329. Section 329 of the Bankruptcy Code allows a court to cancel a fee agreement only if it exceeds the reasonable value of the attorney's services. *See,* e.g., the cases cited by Superior, *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 574 (Bankr.N.D.Tex.1986) and *Matter of Swartout,* 20 B.R. 102, 105 (Bankr.S.D.Ohio 1982). Superior's brief in support of cross-motion for summary judgment at 23–24. Assuming *arguendo* that the analogy is valid, this court would be required to look into the reasonableness of the rates and the number of hours for the services rendered by the garnishee-law firms, a further reduction in any overlap between the two cases.[10]

### B. Which Court Should Hear The Case [11]

If these cases are duplicative, the next question is where the dispute should be heard. The rule of thumb in the Fifth Circuit is that the court initially seized of a controversy should be the one to decide whether it will try the case. *Mann Manufacturing, Inc.,* above, 439 F.2d at 407. *See also Kentucky Fried Chicken Corporation v. Diversified Packaging Corporation,* 552 F.2d 601, 603 (5th Cir.1977). However, as always, the principles underlying the rule are more important than the rule itself, and those principles further support this court's conclusion that both actions should go forward undisturbed. *Schauss,* above, 757 F.2d at 654 n. 8. *See*

---

court in support of the garnishment actions already here. *Compare* Superior's original complaint in the Ohio case at 12–13 *with Cantwell v. Wilson,* 241 S.W.2d 366, 368 (Tex.Civ.App.—Austin 1951, no writ), and *Hobbs v. Downing,* 147 S.W.2d 284, 285–86 (Tex.Civ.App.—Amarillo 1941, no writ).

That Superior *could have* brought all its claims into this court does not mean, however, that it was required to by the common law governing concurrent federal litigation. *Cf. West Gulf Maritime Association,* 751 F.2d at 731 (district court was in position to resolve *all issues based on the pleadings before it*).

**10.** To the extent that the parties have engaged in discovery affecting the issues in the Ohio case, this court would strongly recommend that the parties stipulate to the use of the present discovery in the Ohio case. And the court would gently remind the parties of their obligations under *Dondi Properties Corporation v. Commerce Savings and Loan Association,* 121 F.R.D. 284 (N.D.Tex.1988) (en banc), as well as under Rules 11 and 37, F.R.Civ.P.

**11.** Because the issue of duplicativeness is a close question on the facts presented here, the court addresses this second issue for the sake of completeness.

*Goudchaux's, Inc. v. Wohl Shoe Company, Inc.,* 541 F.Supp. 463, 465–66 (E.D.La. 1982).

Technically, the court first seized of this action was the district court in the Northern District of Ohio. It adjudicated the action and issued the judgment which is the basis of these garnishment proceedings. *Texas Co. v. Disney,* 279 S.W. 280, 281 (Tex.Civ.App.—Eastland 1925, writ ref'd) (garnishment suits are ancillary to and part of main suit). As a practical matter, however, this court was the first to be presented with the issue of "unused fees."

The policies supporting the first court in time rule are (1) comity, or deference to power already being exercised; and (2) orderly administration of justice, or the efficiency and convenience of letting one court work on substantially related issues. *Washington Metropolitan Area Transit Authority v. Ragonese,* 617 F.2d 828, 830 (D.C.Cir.1980), *cited with approval, West Gulf Maritime Association,* 751 F.2d at 729. Against this backdrop, the court has exercised limited power over these cases. It has made no findings of fact outside of this application. Several dispositive motions have become ripe but have not been ruled on, due to the precedence of other cases on the docket.[12]

As to efficiency, there is little hope that a resolution of this suit will bind some or all of the parties to the Ohio action. *Kerotest Mfg. Co.,* 342 U.S. at 183, 72 S.Ct. at 221. *See* part II.A., above. As to the convenience of the parties and the courts, there are several interests to consider. *Columbia Plaza Corporation,* above, 525 F.2d at 628–29. Superior is an Ohio entity while the garnishee-law firms in these actions are all Texas residents. Venue is proper in either court. 28 U.S.C. § 1391(a). For the three Texas defendants in the Ohio case, all witnesses and documents are in Dallas. *See* defendants' reply to plaintiff's brief in opposition to defendants' application for preliminary injunction at 9. But the other two defendants in the Ohio case are not residents of Texas and the parties have not addressed this court's personal jurisdiction over those defendants. *See* Superior's brief in opposition to defendants' application for preliminary injunction at 5; *Kerotest Mfg. Co.,* above, 342 U.S. 183, 72 S.Ct. 221; *Columbia Plaza Corporation,* above, 525 F.2d at 628. This case, as presented to the court by the parties, does not strongly point toward either court, and the lack of substantial overlap in issues confirms this conclusion.

### III. Conclusion

For all of the foregoing reasons, defendants' application for a preliminary injunction is DENIED.

SO ORDERED.

12. The court has also approved agreed settlements and unopposed motions for dismissal that have been submitted by various parties.