**JOAO ALVES, Plaintiff,**

**v.**

**M/V KOORALE, her engines, tackle, bunkers, appurtenances in rem, Defendant.**

---

**M & F FISHING, Plaintiff-in-Intervention,**

High Court of American Samoa
Trial Division

CA No. 32-02

July 9, 2003

■■■■■■■■■■■■■■■■■■■■■

Before KRUSE, Chief Justice, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel: For Plaintiff, William H. Reardon
          For Defendant and Plaintiff-in-Intervention, Jeffrey Waller

### ORDER ON MOTION TO SET TRIAL

The modern day accessibility of the Pago Pago Harbor coupled with American Samoa's status as a United States Territory has given rise to a unique, yet often unsatisfying forum for the resolution of maritime disputes. These complications are exacerbated in this case by attorneys who, while attempting to out-maneuver opposing counsel, have manipulated jurisdictional deficiencies and tested our patience.

### A. The Trouble with Admiralty Law in American Samoa

■ The Constitution of the United States explicitly grants the federal judiciary the power over "all cases of admiralty and maritime jurisdiction." 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, *Practitioner Treatise Series*, § 1-6 (2d ed. 1994) [hereinafter SCHOENBAUM, *Practitioner Treatise*] (quoting U.S. CONST. art. III, § 2). The origins of the language are unclear, but their purpose is without doubt. *Id.* Before the drafting of the Constitution, each state exercised sovereign powers, including the power of their courts to hear admiralty matters. *Id.* However, "[t]he experience of the uncontrolled and divergent activity of these state maritime courts was largely responsible for the apparently uncontroverted view among the delegates and drafters of the United States Constitution that there should be a system of national admiralty courts." *Id.* Such a system, where federal courts "serve as both fora and interpreters of maritime law . . . provide[s] uniform rules of law for the business of shipping, . . . facilitate[s] maritime commerce, [and] appl[ies] uniform remedies for persons traveling or working on navigable waters in connection with these maritime activities." THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, *Hornbook Series*, § 1-2 (2d ed. 1994).

When American Samoa became a Territory, it added yet another port to the jurisdiction of the United States. In part, it was the U.S. Navy's interest in the "deep-water harbor at Pago Pago that originally brought the two sovereigns together." *See* STANLEY K. LAUGHLIN, JR., THE LAW OF UNITED STATES TERRITORIES AND AFFILIATED JURISDICTIONS § 3.3

(1st ed. 1995). Over the years, Pago Pago harbor's usefulness as a strategic naval station dwindled but instead gave way to a vibrant fishing and maritime shipping economy. *See, e.g., In re complaint of Interocean Ships, Inc.*, 2 A.S.R.2d 76, 84-5 (App. Div. 1985). (Murphy, C.J., concurring); *The Vessel Pac. Princess v. Trial Div. of the High Court*, 2 A.S.R.2d 21, 24 (App. Div. 1984) (Gardner, C.J., concurring). As a consequence, this Court was called upon to accommodate the growing need for a local admiralty forum.

■ An early case from the Appellate Division reluctantly declined to hear an admiralty suit absent a grant from Congress—or by the Fono acting on behalf of Congress. *See generally Swift v. Trial Div.*, 4 A.S.R. 983 (App. Div. 1975). The Fono obliged, explicitly overruling *Swift* and amending the High Court's jurisdictional reach to include *in rem* suits. *See* Pub. L. 14-18 (1975); *see also Interocean Ships, Inc.*, 2 A.S.R.2d at 83 (Murphy, C.J., concurring); *Meaamaile v. Am. Samoa*, 550 F. Supp. 1227, 1236-37 (D. Haw. 1982). But the grant of admiralty jurisdiction at the local level was a temporary band-aid. It left voids that could only be filled at the national level by Congress.

■ Yet Congress, either deliberately or through benign neglect, has excluded American Samoa from participating equally and fully in the federal scheme. *See, e.g., Star-Kist Samoa, Inc. v. The M/V Conquest*, 3 A.S.R.2d 25, 28-31 (App. Div. 1986); *Interocean Ships, Inc.*, 2 A.S.R.2d at 82 (Murphy, C.J., concurring); *The Vessel Pac. Princess*, 2 A.S.R.2d at 24 (Gardner C.J., concurring). Even though we are a Territory, Congress could have granted—and still can grant—the High Court the same competence that federal courts have in admiralty matters. *See Meaamaile*, 550 F. Supp. at 1236-37. Congress had done so before with other Territorial courts. *See, e.g., The "City of Panama"*, 101 U.S. 453 (1879) (Territory of Washington); *United States v. Canter*, 26 U.S. 511 (1828) (Territory of Florida). Instead, looming over us has been Acting Chief Justice Murphy's perceptive observation that "owners of vessels entering Pago Pago harbor have fewer substantive rights than in any other American harbor, and perhaps fewer rights than afforded by Commonwealths having free association compacts with the United States." *Interocean Ships, Inc.*, 2 A.S.R.2d at 84.

B. Specific Discrepancies in Jurisdiction

■ It is still true that the High Court cannot issue an injunction pursuant to 46 U.S.C. § 185 and halt proceedings in a "district court of competent jurisdiction," even though it would promote judicial economy and overall convenience:

■ It has been held that the purpose of 46 U.S.C. § 185 is to permit all actions to be consolidated in one action which will dispose of all claims

against a vessel owner. Proceedings under section 185 have also been said to be designed to marshal all claims against a vessel and owner. Certainly these purposes are not promoted by denying the High Court the power to enjoin proceedings in other forums. *Interocean Ships, Inc.*, 2 A.S.R.2d at 84 (Murphy, C.J., concurring) (citations omitted); *see In the Matter of Complaint of Voyager, Inc.*, 23 A.S.R.2d 47, 48 (Trial Div. 1992); *Fa`atasiga v. The M/V Ocean Pearl*, 19 A.S.R.2d 59, 60 (Trial Div. 1991). Additionally, the High Court cannot transfer civil actions to other district courts under 28 U.S.C. § 1404(a), despite the statute's explicit language that transfers are "for the convenience of parties and witnesses, [and] in the interest of justice." *See The Vessel Pac. Princess*, 2 A.S.R.2d at 21. Congress has yet to rectify these obvious defects that plague the High Court's limited admiralty jurisdiction.[1]

## C. What Can be Done?

One esteemed colleague contemplated possible solutions to this dilemma:

> First, Congress could extend federal jurisdiction to the High Court as it has done in other territories by providing that the High Court have the jurisdiction of a United States District Court . . . . Second, it could place American Samoa under the jurisdiction of a United States District Court, such as the United States District Court of Hawaii . . . . Third, it could create a United States District Court for the territory.

---

[1] In 1988, Congress did grant the High Court jurisdiction to enforce a preferred ship mortgage lien, thus including us in the federal scheme on this narrow point. *See United Air Lines Employees' Credit Union v. M/V Sans End*, 15 A.S.R.2d 95, 100 (Trial Div. 1990) (citing 46 U.S.C. §§ 31325-25, added by P.L. 100-710). However, this grant followed an era that was "fraught with confusion and uncertainty." *Id.* Originally, the Trial Division had ruled that it had no authority to foreclose on a ship's mortgage. *See Sec. Pac. Bank v. M/V Conquest*, 2 A.S.R.2d 40, 42 (Trial Div. 1985). Upon a motion for reconsideration, the Trial Division reversed itself. *Id.* The Appellate Division reversed yet again, reinstating the Trial Division's original ruling. *See Star-Kist Samoa, Inc. v. M/V Conquest*, 3 A.S.R.2d 25, 31 (App. Div. 1986). Finally, left with no choice, on remand the Trial Division held that it did have the power to foreclose a ship mortgage, not on account of the Ship Mortgage Act but rather by the general admiralty and equity jurisdiction of the High Court. *Sec. Pac. Nat'l Bank v. The M/V Conquest*, 4 A.S.R.2d 59, 64-65 (Trial Div. 1987). Thus, Congress has acted once to amend an admiralty related statute to include American Samoa—but even then, the gesture had no substantive effect since we had reached the same result under the law of equity.

*The Vessel Pac. Princess,* 2 A.S.R.2d at 24-25 (Gardner, C.J., concurring) (citations omitted). With the one exception already mentioned, that of the Ship Mortgage Act, Congress has not adopted any of Chief Justice Gardner's suggestions. To be sure, the defects in the High Court's jurisdiction are not dire. Admiralty cases usually proceed in this Court without incident; but there are always exceptions.

## D. Why this Case Presents a Problem

It was just a matter of time before a case like the present one came along. The Plaintiff, Joao Alves ("Alves"), allegedly injured himself while working on the M/V Koorale. On April 12, 2002 Alves filed an *in personam* action against M & F Fishing, the owner of the M/V Koorale, in the U.S. District Court for the Southern District of California. Three days later, Alves filed an *in rem* action against the M/V Koorale here in the High Court. Matters proceeded in the U.S. District Court with only one notable incident: early on, it seems Alves' request for a $2 million bond was denied. In any event, a trial date is set for September 30, 2003.

Otherwise, after Alves filed his claim in this Court, no further action was taken until September 13, 2002, when Alves had the M/V Koorale arrested. The basis for the arrest was the same incident that gave rise to Alves' *in personam* suit in California. Had the M/V Koorale been arrested in any other State or Territory that has a U.S. District Court, then, under 25 U.S.C. § 1404 (a), the *in rem* court could have transferred the case to California so that the *in rem* and *in personam* claims could be heard together. *See* SCHOENBAUM, *Practitioner Treatise*, § 21-10. But, as noted, we are not empowered to order a 1404(a) transfer.

The last time the possibility of a transfer was before us, the *in rem* suit was barred by the statute of limitations, and thus, having found we lacked the power to transfer the action, the suit was dismissed. *See The Vessel Pac. Princess,* 2 A.S.R.2d at 21. This time, however, the case is not time barred and we are forced to hear it, even though similar proceedings are ongoing in California. As far as we can tell, this is the first time such a situation has arisen, but, if the conduct of the parties is any indication, there is no guarantee that it will be the last.

Indeed, the situation could have been prevented had the parties, acting through their lawyers, chosen a more civil, efficiency-oriented approach. The parties could have reached a settlement, either dismissing the case outright or, at least, agreeing to certain procedures that would avoid litigation in two courts.[2] Instead, the parties seem more interested in

---

[2] The biggest obstacle prompting the impasse seems to have been the parties' inability, or unwillingness, to agree on a bond amount in the

accumulating litigation costs and attorney's fees, having already filled up two accordion folders with paper before even reaching discovery. Neither side is absolved from blame and their burdens are their own doing.

Others are equally burdened but, however, wholly blameless—namely, local merchants and this Court. Two motions exemplify these burdens. Firstly, Southwest Marine, Inc., ("SWM"), a local shipyard owner, has sought to intervene in the action for payment arising out of services they say they provided to the substitute custodian while the vessel was under arrest. *See* Order On Motion To Intervene, June 17, 2003.[3] Secondly, in the motion before us, Alves is asking us to postpone setting a trial date to await the outcome of the trial in the California District Court in September.

## Discussion

The problem of parallel litigation arises from time to time in the federal system. No clear test, however, has emerged. *See generally Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101 (S.D.N.Y. 1997); *Superior Sav. Ass'n v. Bank of Dallas*, 705 F. Supp 326 (N.D.Tex 1989); *Bamdad Mech. Co. v. United Techs. Corp.*, 109 F.R.D. 128 (D.Del. 1985). But even if there were a clear way to resolve this dilemma at the federal level, such a test would be anomalous in this case.

This suit portrays an abuse by the plaintiff of a stark wanting in the High Court's admiralty jurisdiction, as it interplays with admiralty litigation generally in the United States. Thus, any consideration of a stay that only takes into account the familiar considerations of judicial efficiency or convenience of the parties has serious shortcomings in this specific instance. Instead, we must be wary of the forum manipulation at play here, and strive to assure that it is not repeated. Until and unless Congress acts to provide for a U.S. District Court for American Samoa, or otherwise appropriately empower the High Court in its national scheme of admiralty adjudication, we cannot sit idly by and let litigants

---

U.S. District Court. From the record, we note that the Magistrate refused to order a bond for Alves' asking price of $2 million. In this Court, the defendants have argued from the start that the *in rem* suit was a pretext to garnering the bond—and accompanying leverage—that Alves failed to obtain in California. If true, it only goes to show that minimal compromise would have spared us the burden of this suit.

[3] Whatever the outcome of this case, whether Alves prevails or not, either here and/or in California, his tactics have encumbered local resources. While the Territory is normally receptive to an infusion into the local economy, the precarious outcome of litigating in two forums could result in a trail of unpaid, disappointed, and litigious merchants.

use this Court as a pawn in trial tactics.

Alves proffers two reasons in support of staying the suit in deference to the California trial: 1) to prevent a waste of judicial resources, and 2) that the pleadings are not yet finished. As noted, normally, judicial efficiency is a paramount consideration in exercising this Court's inherent discretionary powers to stay a proceeding. *See Evergreen*, 954 F. Supp. at 103. But we find that Alves' reasoning is disingenuous.

Alves is not concerned with expending resources. At oral arguments, counsel stated that if the case proceeded here, "these witnesses are still going to testify, and they're still going to get paid, and the attorneys are still going to get paid." But, because of the possibility of *res judicata*,[4] Alves' preference is to proceed with the case in California because, in his lawyer's own words, "[The High Court] tends to give lower damages for pain and suffering than what someone gives in the Mainland." When pressed he submitted, "they've [the defense] got an advantage [here in American Samoa]."

Here, we see conceptual problems with plaintiff's tactic. While plaintiff has filed in American Samoa, bringing into play economic consequences to the Territory, he apparently has no intention whatsoever to litigate his rights in American Samoa—since he obviously feels that his chances for a greater damages award are better before a California jury.[5] Thus, the whole point to plaintiff's suit here is simply to utilize the High Court as collection forum for a *potential in personarn* judgment out of California, since there is no procedure in place at law whereby the High Court could insist on a transfer of all proceedings against the vessel to American Samoa.

■ This is problematic. The procedures governing the arrest of a vessel are more relaxed than the procedural due process requirements normally required with other pre-judgment seizures of property, "including effective notice, meaningful judicial review, and a right to a prompt hearing after the seizure." SCHOENBAUM, *Practitioner Treatise* at § 21-6. Having failed to meet his burden to attach any of the defendant's property or even receive a bond in California, Alves was able to use the

---

[4] This theme was evident early on in the proceedings:

    Court:     Then how do we deal with probably inconsistent judgment [in the two cases]?

    Attorney:  We have to deal with it *res judicata* collateral estoppel.

    Court:     First out the door with a paper judgment?

    Attorney:  It's almost what it comes down to. That's what the case seems.

[5] Jury trials in civil actions are not available in American Samoa.

. . .

relaxed admiralty procedures and the unique jurisdictional posture of this Court to get around these due process requirements.

On the other hand, the defendants' purpose in bringing this motion to set an early trial date is not lost on us. While we understand that the defendants did not choose to be sued here in American Samoa, they too are quite clearly involved with the same exercise of assessing the tactical advantages/disadvantages with venue. Accordingly, they are pressing for a trial setting in the High Court before the one scheduled in California, to presumably complicate Alves' case and to obtain what the parties seem to believe is a defendant-friendly forum in which to litigate the case.

We have had enough. Before proceeding any further with this matter, we desire to be thoroughly briefed on the question of whether or not this Court should not just formally defer to the Southern District Court of California by outright dismissal of these proceedings, either for lack of prosecution, *forum non conveniens,* and/or any other reason meriting our discretion.

## Conclusion

We realize that admiralty litigation in American Samoa can be, at times, murky. Nonetheless, it will remain a part of the Territory's jurisprudential culture for some indefinite time. Therefore, all parties, and this Court, have a duty to work with—not against—the procedures in place. The litigants should not attempt to play the High Court against a federal court; rather they should endeavor to avoid, to the extent possible, inflaming the friction inherent with the bringing of an admiralty suit in American Samoa. This Court should also strive to avoid confrontation with our federal counterpart; but, at the same time, we cannot allow any party to exploit the High Court and the Territory's limited resources for their gain.

## Order

On the foregoing, the following order is entered:

Plaintiff's brief on the issue of dismissal is due within 30 days of filing hereof. Defendants have 15 days to reply with an additional 5 days thereafter for plaintiff to close the argument.

It s so ordered.