**Albert LEWIS, et al., Plaintiffs,**

v.

**NATIONAL FOOTBALL LEAGUE, et al., Defendants.**

**Civ. A. No. 91–2685 (RCL).**

United States District Court, District of Columbia.

Nov. 3, 1992.

Richard Ben–Veniste, James W. Quinn, Jeffrey L. Kessler, David G. Feuer, Weil, Gorshal & Manges, New York City, for plaintiffs.

Herbert Dun, Gregg H. Levy, Sonya D. Winner, Covington & Burling, Washington, DC, for defendants.

### MEMORANDUM OPINION

(Denying Dismissal, Transfer, or Stay)

LAMBERTH, District Judge.

This matter comes before the court on Defendants' Motion to Dismiss or Transfer or, in the Alternative, for a Stay ("Defendants' Motion"); Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or Transfer or, in the Alternative, for a Stay of this Action ("Plaintiffs' Opposition"); Defendants' Reply Memorandum in Support of Motion to Dismiss, Transfer, or Stay ("Defendants' Reply"); Plaintiffs' Surreply in Opposition to Defendants' Motion to Dismiss or Transfer or, in the Alternative, for a Stay of this Action ("Plaintiffs' Surreply"); and Defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss, Transfer, or Stay ("Defendants' Supplement"). Upon consideration of the representations of counsel, and for the reasons presented below, it is hereby ORDERED that Defendants' Motion to Dismiss or Transfer or, in the Alternative, for a Stay is DENIED.

### I. FACTS.

This case, as amended, was filed in October 1991 by three professional football players against the National Football League and its twenty-eight member teams. The plaintiffs claim damages under the anti-trust laws arising out of the NFL's "Plan B" right of first refusal/compensation system during the 1989 NFL season.[1]

---

1. Plan B was adopted by the National Football League in February 1989. Under the first refus-

The plaintiffs have since filed a motion for class certification on behalf of all players [2] who were subject to Plan B during the 1989 season.

This case is one of several cases between football players and the NFL that either have recently been litigated or are currently pending. The first case of recent vintage was filed in the District Court for Minnesota in October 1987. *Powell v. National Football League*, Civ. No. 4–87–917 (D.Minn.). In that case, nine football players filed a class action lawsuit challenging the first refusal/compensation system then in effect. The NFL claimed that a nonstatutory labor exemption to the anti-trust laws applied. U.S. District Judge David Doty agreed in part, holding that the exemption applied to the player/NFL relationship, but only until negotiations between the NFL and the players reached an impasse as to the particular issue in question.

The nonstatutory labor exemption issue was certified to the Eighth Circuit Court of Appeals. That court held that the exemption applied as long as the National Football League Players Association (NFLPA) served as the players' collective bargaining representative. *Powell v. NFL*, 930 F.2d 1293 (8th Cir.1989), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 711, 112 L.Ed.2d 700 (1991). In light of this decision, the NFLPA relinquished its role as the players' collective bargaining representative on November 6, 1991, thus terminating the parties' labor relationship.

Thereafter, eight players filed suit against the NFL, in the District Court of New Jersey, seeking damages under Plan B for the 1990 NFL season. *McNeil v. NFL*, Civ. Action No. 90–1402 (D.N.J.).[3] On motion by the NFL, the case was transferred to Judge Doty in Minnesota. A trial jury recently found against the defendants, and damages were awarded to four of the eight plaintiffs.

Meanwhile, Judge Doty decertified the class in *Powell*, on remand from the Eighth Circuit, and dismissed without prejudice the claims of the class members based upon the 1989 season.[4]

Finally, on October 15, 1991, the NFL filed a declaratory judgment action in the District Court for Minnesota against three Minnesota-resident football players and the NFLPA. *NFL v. NFLPA and Hilton*, Civ. No. 3–91–635 (D.Minn.). The suit seeks a declaratory judgment that the NFL bears no anti-trust liability for the first refusal/compensation restriction as applied during the 1989 season. On October 17, 1991, the three named plaintiffs in this suit brought this action against the NFL and its twenty-eight member teams, their claim being that the NFL's application of the first refusal/compensation system in 1989 violated the anti-trust laws.

Defendants have now filed this motion to dismiss, transfer, or stay plaintiffs' action.

## II. DEFENDANTS' ARGUMENTS.

In defendants' view, the basis for this motion is "relatively simple": pending litigation in the District Court for Minnesota and the Eighth Circuit render plaintiffs' suit in this forum duplicative, thus justifying a dismissal, transfer, or stay of the present action. Defendants' Reply at 1.

Duplicative litigation, defendants argue, is to be avoided whenever the equities allow. By allowing only one suit—the first-

---

al/compensation system, a player whose contract has expired with one NFL team may negotiate with other NFL clubs. However, before signing with the second club, the first team is given an opportunity to match the contract the player has negotiated with the second team. If the first team chooses not to match the offer, the second club must compensate the first team with draft choices.

**2.** Excluded from the class would be the named plaintiffs in *Powell v. National Football League*, No. 4–87–917 (D.Minn.). *See* fn. 4.

**3.** Another player-brought case, *Allen v. San Diego Chargers*, Civ. No. 91–4342 (C.D.Cal.), is pending, but has been stayed.

**4.** The NFL has appealed this ruling to the Eighth Circuit.

The 1989 claims of the named plaintiffs in *Powell* were dismissed with prejudice. As a result, the named plaintiffs can not be members of the plaintiff class in this case.

filed suit—to go forward, the court saves resources (both of the court and of the parties) and avoids piecemeal litigation and inconsistent adjudication. On this basis, defendants claim that since *Hilton*, their Minnesota declaratory judgment action, is the first-filed suit, it should be allowed to proceed. Defendants' Motion at 6–7. The defendants do acknowledge that equitable concerns are relevant to the decision as to which litigation will proceed, yet claim that the equities weigh in their favor.

Defendants' first argument is that the present action, as an "exact duplicate" of the first-filed *Hilton* case, should be dismissed. Defendants' Motion at 8. Defendants claim that the central legal issues raised in this case are "virtually identical" to those in *Hilton* (at least if the court accepts defendants' claim that the current plaintiffs' claims for damages would be compulsory counterclaims in the Minnesota declaratory judgement action), and thus that "dismissal of this action will not preclude plaintiffs from fully litigating their damage claims." Defendants' Motion at 9.

In the alternative, defendants claim that this case should be transferred under 28 U.S.C. § 1404(a) to the District Court for Minnesota, "a court that has related cases pending before it and has developed substantial expertise on the subject." Defendants' Motion at 9. Such a transfer would, it is claimed, further the "interest of justice," 28 U.S.C. § 1404(a), since 1) there is an identical case, *Hilton*, already filed in Minnesota; 2) pending litigation in Minnesota and the Eighth Circuit might moot this case; and 3) Judge Doty has already handled "an entire family of related cases," Defendants' Motion at 11, and in so doing has acquired "considerable expertise." Defendants claim that these justifications support transfer and consolidation of this case with *Hilton*, and that transfer would satisfy the "fundamental statutory goals" of 28 U.S.C. § 1404(a)—the conservation of time and resources and consistent adjudications—without causing plaintiffs any significant inconvenience. As evidence of the reasonableness of this determination, the defendants rely heavily on U.S. District

Judge Bissell's decision to transfer *McNeil v. NFL* from New Jersey to Minnesota.

Finally, defendants' third alternative is to have this court stay this case pending the decisions of the District Court for Minnesota in *Hilton* and *McNeil* and the Eighth Circuit Court of Appeals in *Powell*.

## III. ANALYSIS.

The defendants' arguments raise several issues of federal civil procedure and federal jurisdiction. However, the simple conclusion defendants would have this court reach is not justified by the facts. Rather, the equitable factors which must support defendants' motion under both the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1404(a) instead weigh in favor of allowing this litigation to continue in *this* court. Each of defendants' three alternative motions will be addressed in turn.

### A. Defendants' Motion to Dismiss: The Hilton Declaratory Judgment Action.

One of defendants' main contentions is that this suit should be dismissed because of the pendency of the earlier-filed declaratory judgement action, *NFL v. NFLPA and Hilton,* in Minnesota. Defendants claim that the two cases involve similar, if not identical, issues of law and fact and therefore should be consolidated in Minnesota. Although this court believes that the two cases may well be consolidated, it should be done in this court.

Case law involving a declaratory judgment and an inverse action filed in another jurisdiction typically addresses the role of the district court in which the declaratory judgment action is filed. However, from those cases, it is possible to determine an appropriate role for the second court, as well. In this action, the court finds itself in this "second court" role.

#### 1. First to File Rule.

Defendants, having filed the *Powell* litigation two days prior to the plaintiffs' filing of this case, place heavy emphasis on the first to file rule. This rule typically requires the court of the second-filed case to dismiss or transfer the action before it in

favor of comparable litigation previously filed in another jurisdiction. However, that standard is not applied as universally as defendants would have this court believe. In fact, as defendants acknowledge in a footnote, even *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620 (D.C.Cir.1975), the D.C. Circuit case on which defendants rely for the proposition that duplicative litigation should be avoided, explicitly rejects defendants' contention that the "first to file" rule necessarily determines the proper forum.

In *Columbia Plaza*, the District of Columbia District Court refused to enjoin the prosecution of a second suit in the Southern District of New York; the second suit was based on matters which, the D.C. plaintiffs alleged, would have been a mandatory counterclaim in the D.C. cause of action. The Court of Appeals reversed, holding that the solution to the problem of enjoining duplicative litigation "requires a balancing not of empty priorities but of equitable considerations genuinely relevant to the ends of justice." *Id.* at 628 (citation omitted). Taking its cue from the Supreme Court, the D.C. Circuit noted that "[t]he factors relevant to the wise administration here are equitable in nature." *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952).

The court must follow the D.C. Circuit's view that "choice of forum cannot be suitably made by the mechanical application of [the first to file] principle." *Columbia Plaza*, 525 F.2d at 627. Although the fact that defendants filed their Minnesota case two days prior to the plaintiffs' filing here is relevant, it cannot obscure the fact that equitable concerns and the interest of justice dictate that the action proceed in this court.

2. Equitable considerations.

■ One consideration in determining which action should proceed is whether it appears that the declaratory judgment action was filed in anticipation of litigation by the other party. *Ven–Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194 (11th Cir.1982). Courts have held that such a

preemptive strike should be disregarded in selecting the proper forum if equitable concerns so merit. *See, e.g., Ven–Fuel; State Farm Fire and Cas. Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C.1988); *Yoder v. Heinold Commodities, Inc.*, 630 F.Supp. 756 (E.D.Va.1986); *Consolidated Rail Corp. v. Grand Trunk Western R. Co.*, 592 F.Supp. 562 (C.D.Pa.1984). Anti-trust cases are no exception. *See, e.g., Natural Gas Pipeline Co. v. Union Pacific Resources Co.*, 750 F.Supp. 311 (N.D.Ill.1990) (court dismissed earlier-filed declaratory judgment action in light of later-filed anti-trust lawsuit).

In this case, it is clear that the NFL filed *Hilton* to preempt suits brought by players in other fora. At the time it filed *Hilton*, the NFL had notice of the *McNeil* and *Allen* cases (which are based on claims post-dating 1989). In addition, the NFL clearly expected more suits, including suits based on the 1989 season: as paragraph 50 of the NFL's Class Action Complaint for a Declaratory Judgement in *Hilton* states, "It appears likely that individual players and the NFLPA will take advantage of the District Court's September 30 Order by filing individual anti-trust lawsuits." Complaint at 19. Moreover, even though the defendants disclaim such a motive here, it was certainly in defendants' best interests to adjudicate this matter in a friendly jurisdiction, the Eighth Circuit, rather than to wait for players to file suits in less comfortable fora, such as New Jersey (*McNeil*), California (*Allen*), and Washington, D.C. These elements indicate that the NFL's declaratory judgment complaint was a preemptive strike that does not deserve the protection of the first to file rule.

A second equitable concern relevant to the decision to dismiss one of two duplicative lawsuits is that the time of the hearing of the motion to dismiss or transfer, not the time of filing, determines the relevant procedural posture. As of the present time, the existence of this coercive litigation renders moot the declaratory judgment action in Minnesota and argues against the dismissal of this case.

As a third concern, a district court is within its discretion to refuse to entertain a

declaratory judgment action when another proceeding in another jurisdiction will resolve the issue in its entirety. *Sturge v. Diversified Transport Corp.*, 772 F.Supp. 183 (S.D.N.Y.1991). *See also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942). Defendants readily admit that this case will indeed resolve all issues of law and fact raised by the *Hilton* action. And, there is no indication that adjudication will be had more quickly in Minnesota than here. Thus, even though this line of cases addresses the role of the "first court," it offers guidance to this court in its "second court" role. There is no reason to transfer this case to Minnesota when full, fair, and complete adjudication of all issues may be had before this court.

Finally, and perhaps most importantly, the plaintiffs have made the District of Columbia their choice of forum for this action in which they litigate harms allegedly done to them by the NFL defendants. That choice must be afforded proper weight and cannot be dismissed merely because defendants opt for a different forum.

These considerations render the first to file rule inapplicable to the present situation. The equitable concerns weigh in favor of granting the plaintiffs their choice of forum. Thus, defendants' motion to dismiss will be DENIED.

B. *Defendants' Motion to Transfer: Forum Shopping, and Equitable Concerns.*

■ Defendants have asserted that the "interest of justice" requires a transfer of this case. 28 U.S.C. § 1404(a). Their first arguments, as in their motion to dismiss, concern forum shopping. In addition, they also claim that the equitable considerations demonstrate that this case should be transferred. Finally, as an example, they rely heavily on Judge Bissell's decision to transfer *McNeil v. NFL* from New Jersey to Minnesota. Each of these contentions are addressed below.

1. Forum Shopping.

While each party has accused the other of engaging in impermissible forum shopping in choosing the situs of this lawsuit, it is plainly evident that both sides have filed their respective cases in a jurisdiction favorable to their respective positions. Notwithstanding both parties' protestations of innocence, there is sufficient evidence to indicate that the District of Columbia is the proper forum for this suit.

Defendants first claim that Minnesota is the proper forum since it was chosen by the *Powell* plaintiffs several years ago; defendants claim that the current plaintiffs now should have to abide by that decision. However, although these plaintiffs may have been class members in the *Powell* case, they were not named plaintiffs and there is no indication that they had any say in where that lawsuit was brought. Thus, there is no reason to bind them to somebody else's strategic decisions.

Defendants next assert that the District of Columbia is an improper forum because no plaintiffs reside here, only one resides close to this district (Mr. Paige resides in Silver Spring, Maryland, a suburb of Washington, D.C.), and even he does not wish to serve as a class representative. Defendants' Supplement at 2. These arguments are unavailing. Under 28 U.S.C. § 1391 and 15 U.S.C. § 22, venue is proper here due to the contacts the defendants have with this district.

Thus, venue is proper in this district; further confirmation of this determination is supplied by equitable factors.

2. Equitable Concerns.

As in the discussion of the motion to dismiss, above, the court finds that, on the whole, the equities run in favor of maintaining this litigation here.

Defendants first note that an identical case, *Hilton*, is pending before Judge Doty. As demonstrated above, however, there is no magic in the fact that a declaratory judgment action has been filed in Minnesota. In fact, as this opinion demonstrates, the interest of justice indicates that *Hilton*,

not this case, should be transferred or dismissed.

Defendants next claim that litigation in Minnesota and before the Eighth Circuit might moot this case. Since briefs were filed, however, the *McNeil*[5] case has been decided against the NFL, thus destroying one of their arguments. In the Defendants' Reply, the NFL places great emphasis on the fact that collateral estoppel might bar the claims in this case if the Eighth Circuit were to decide *Powell* against the players. Of course, collateral estoppel applies to an individual regardless of the forum, and transfer is thus not justified on that basis.

Finally, defendants note the expertise Judge Doty has acquired in NFL anti-trust cases. Of course, this court has already completed a 235–member anti-trust class action against the NFL[6] and has another NFL player anti-trust class action pending.[7] Notwithstanding Judge Doty's expertise, and recognizing that the specific issues in the various cases are not identical, the court feels quite competent in being able to handle the class certification, discovery, and trial matters arising from this particular type of professional football anti-trust case.

When these considerations are combined with the plaintiffs' election of forum and defendants' preemptive declaratory judgment action, discussed above, the equitable concerns again weigh against defendants' motion to transfer.

### 3. Contrast: The decision to transfer *McNeil.*

Finally, the defendants claim that the "fundamental statutory goals" of 28 U.S.C. § 1404(a) (as cited by defendants), the conservation of time and resources and consistent adjudication, require transfer (even though it appears that these would be satisfied by a unified proceeding in *either* court). To substantiate their claim that Minnesota is the superior forum, the defen-

dants rely on Judge Bissell's decision to transfer *McNeil.*

Defendants fail to acknowledge, however, that the situation facing Judge Bissell was radically different from that facing this court. First, Judge Bissell concluded that "[t]he claims in the two cases presently under review in Minnesota encompass the underlying claims presented in the litigation here." *McNeil v. NFL*, Civ.Act. 90–1402, slip op. at 12 (D.N.J. June 12, 1990). Judge Bissell then noted that the eight *McNeil* plaintiffs were also members of the *Powell* class; thus, the relief sought in *McNeil* was encompassed by that already sought on behalf of the *McNeil* plaintiffs by virtue of their membership in the *Powell* class.

On the other hand, this suit, claiming damages for the implementation of the first refusal/compensation system for the 1989 season, is not before Judge Doty; in fact, these claims were omitted from the *Powell* litigation by Judge Doty's decision. Moreover, these issues have expressly been excluded from consideration by the Eighth Circuit's decision in *Powell.* Thus, the unity of parties and issues evident in *McNeil* is not present here.

Judge Bissell then sought to avoid creating inconsistent adjudications between New Jersey and Minnesota regarding the players' rights. As this court's decision in *Brown v. Pro Football, Inc.*, No. 99–1071, June 4, 1991, has already determined that the NFL faces anti-trust liability for the 1989 season, consistent adjudication regarding the 1989 season may only be had if this case is tried in *this* court. Moreover, as that decision is in conflict with the decision of the Eighth Circuit, the creation of a split is no longer an issue.

### 4. Conclusion.

Therefore, despite defendants' best efforts to demonstrate that Minnesota is the proper forum for this action, defendants'

---

**5.** Since the NFL's briefs were filed, a jury in the *McNeil* case found against the NFL and awarded damages to four of the eight plaintiff players. The *Powell* appeal is still pending before the Eighth Circuit.

**6.** *Brown v. Pro Football, Inc.*, Civ. No. 90–1071 (RCL) (D.D.C.).

**7.** *Tice v. Pro Football, Inc.*, Civ. No. 91–2314 (RCL) (D.D.C.).

arguments are unavailing. Rather, there appears to be a race to the courthouse, and the interest of justice, the touchstone of 28 U.S.C. § 1404(a), demands that defendants' victory in that race not prejudice the valid claims of the plaintiffs. The equities, properly considered, justify trial in this jurisdiction. Defendants' motion to transfer is therefore DENIED.

### C. *Defendants' Motion to Stay this Case.*

■ Finally, defendants argue that a final alternative would be to stay this lawsuit until the issues are resolved in *Hilton*, *Powell*, and *McNeil.* As discussed above, there is no reason to hold this lawsuit for the declaratory judgment action in *Hilton;* rather, of the two lawsuits, this one is the superior. Moreover, there is no indication that the Eighth Circuit will reverse Judge Doty's decision in *Powell*, which closely tracked the Eighth Circuit's first *Powell* decision. Thus, a stay would only serve to postpone, potentially to plaintiffs' detriment, an inevitable resolution of this case. And finally, the *McNeil* case has already been decided, and its outcome was not favorable to the NFL. Therefore, a stay of the present lawsuit would serve no purpose and defendants' motion to stay this case is DENIED.

### IV. CONCLUSION.

In short, the defendants won the race to the courthouse and beat the plaintiffs in the filing of their anticipated litigation by two days. However, but for the earlier filing date, the equitable concerns do not weigh in favor of a Minnesota trial. Rather, a proper lawsuit lies in this court, and the motion to dismiss, transfer, or stay the present lawsuit will therefore be DENIED.