**THAYER/PATRICOF EDUCATION FUNDING, L.L.C., and Thayer/Patricof Education Holdings, L.L.C., Plaintiffs,**

v.

**PRYOR RESOURCES, INC., Fred H. Pryor, Philip R. Love, and Michael B. Hays, Defendants.**

**No. Civ.A. 01–1565(JDB).**

United States District Court, District of Columbia.

April 23, 2002.

———

Paul Martin Wolff, William & Connolly, Washington, DC.

Daniel Allen Sasse, Crowell & Mooring, LLP, Washington, DC.

George D. Ruttinger, Crowell & Mooring, LLP, Washington, DC.

Jason M. Hans, Randall E. Hendricks, Rouse Hendricks, German May, PC, Kansas City, KS.

Randall E. Hendricks, Rouse Hendricks, German May, PC, Kansas City, KS.

## *MEMORANDUM OPINION*

BATES, District Judge.

Thayer/Patricof Education Holdings, L.L.C. and Thayer/Patricof Education Funding, L.L.C. (collectively "Thayer") bring this action raising claims of breach of contract, misrepresentation, fraud, and federal and state securities violations in connection with the purchase of 80 percent of the stock of defendant Pryor Resources, Inc. ("Pryor Resources" or "the Company"). Thayer purchased the controlling share of the Company from defendants Fred H. Pryor, Philip R. Love, and Michael B. Hays ("defendants") through a Recapitalization Agreement ("the Agreement") executed on January 25, 1999 at Thayer's offices in Washington, D.C. The individual defendants are three former owners and directors of the Company who, after the sale, still retained a 20 percent stake in the Company's stock.[1]

In early 2001, the former controller of the Company allegedly confessed that he had been forcing entries in the Company's books. Thayer entered discussions with the defendants to determine the extent of financial problems with the Company, and eventually threatened suit. After settlement negotiations broke down, on July 3, 2002, Thayer sent a notice of intent to sue defendants and the Company for indemnification pursuant to the Recapitalization Agreement. Complaint at ¶ 56. Hours later, defendants filed suit in the United States District Court for the District of Kansas, claiming that Thayer breached the Recapitalization Agreement by attempting to circumvent the remedies provision in it. The Kansas action challenges Thayer's right to issue the claim letters, seeks to limit Thayer's recovery, and attacks Thayer's theories of recovery.

This action commenced two weeks later. Thayer claims that the defendants "cooked the Company's books" and "forced" accounting entries in its general ledger in an effort to inflate the value of the company prior to the sale to Thayer. Complaint at ¶¶ 2, 17–18. Thayer alleges that this "scheme was undertaken with the knowledge, consent, and participation of Defendants Pryor, Love, and Hays by, at a minimum, their willful and reckless blindness to the fraud...." *Id.* at ¶ 21. Thayer seeks rescission of the Agreement, restitution of an alleged $100 million loss from the purchase of the Company, and punitive damages.

Presently before the Court is defendants' motion to dismiss or, in the alternative, to transfer the case to the United States District Court for the District of Kansas. Together with issues of appropri-

---

1. Thayer/Patricof Education Funding, L.L.C., is the parent of Thayer/Patricof Education Holdings, LLC; the latter actually executed the Agreement. Thayer amended its com- plaint on July 25, 2001 to add Thayer/Patricof Funding as a plaintiff. For simplicity, the Amended Complaint is referred to as "Complaint."

ate venue and indispensable parties, the thrust of defendants' motion is that, under 28 U.S.C. § 1404(a), Kansas is the more appropriate forum for this action because the Company, key witnesses, and documents are located in the Kansas City metropolitan area. Defendants assert that "[t]he epicenter of this case is, in all aspects, Kansas and the Kansas City metropolitan area," Defendants' Motion at 2, and urge that because they filed their complaint in Kansas first, the proper forum to resolve the parties' competing claims is Kansas. After reviewing the pleadings and other papers filed, and in consideration of the oral arguments of counsel, the Court denies defendants' motion to dismiss or to transfer.

### BACKGROUND

Pryor Resources, located in Overland Park, Kansas, conducts educational and career training seminars throughout the country built around the well-known Fred Pryor Seminars, and also publishes related catalogues, books, tapes, and various electronic and e-commerce media. Complaint at ¶¶ 13–14. Before the sale to Thayer, Fred Pryor was the Chairman of the Board, Philip Love was President and Chief Executive Officer, and Michael Hays was Vice–President of the Company. Love Affidavit at ¶ 3. In the fall of 1998, at the height of the Internet boom, Thayer began considering an investment in the Company. Complaint at ¶ 34. Before the sale, defendants Pryor, Love, and Hays owned all of the shares of capital stock in the Company. *Id.* at ¶ 35. Pryor and Love both live in Kansas City, Missouri, and Hays lives in the Kansas suburbs of Kansas City. *Id.* at ¶¶ 10–12.

Thayer is a venture capital group incorporated in Delaware and located in Washington, D.C. *Id.* at ¶ 8. Several Thayer directors live in Washington, including Jeffrey Goodman, Christopher Temple, and Frederick Malek; two Thayer directors, George Jenkins and Salem Schuckman, live in Pennsylvania and New York, respectively. *See* Defendants' Motion, Ex. 6.

On January 25, 1999, Thayer and the defendants executed the Recapitalization Agreement with Thayer purchasing 717 shares of the Company stock for $65,805,514. Agreement at p. 1, B. Thayer also assumed most of the company's liabilities, thus providing an overall total investment of more than $83 million in exchange for roughly 80 percent of the Company. Complaint at ¶ 4. The purchase gave Thayer control of the Board of Directors, leaving Pryor, Love, and Hays as minority shareholders. The Agreement was signed and executed in a closing at Thayer's offices in Washington, D.C., where $80 million in cash and securities was exchanged for the Company's stock. Temple Declaration at ¶ 3. The sale was thus negotiated, consummated and finalized in Washington.

Thayer retained Ernst & Young to perform a due diligence review of the Company's financial accounts and to certify the working capital; that was done from November 1998 through January 1999. Love Aff. at ¶ 19. Thayer claims that defendants warranted that the Company's finances were complete and accurate, and that in making the purchase it relied on representations defendants made during the negotiation and sale of the Company and on the 1996 and 1997 financial statements attached to the Recapitalization Agreement.[2] Thayer claims that those

---

2. Section 3.7 of the Agreement states that the Company's financial statements from 1996, 1997, and 1998 fairly and accurately represent the financial position and results of operation of the Company. Sections 3.17 and 3.20 of the Agreement warrant that the Com-

pany had satisfied all of its tax liabilities and that the appropriate liabilities and aggregate amount of accounts payable were accurately reflected on the financial statements. Section 3.25(c) represents that the Company did not have any liabilities in excess of $100,000 oth-

representations were false and that the defendants "walked out of Washington with $80 million based on their misrepresentations." Plaintiffs' Opposition at 7. Thayer alleges that, as directors and officers of the Company, defendants either intentionally misrepresented the Company's value or were grossly negligent in allowing such representations to be made.

After closing on the sale, Thayer again hired Ernst & Young to complete a final audit of the new Company's assets and liabilities, and to prepare an Audited Closing Balance Sheet. This audit did not find any discrepancies in the Company's finances. Since the purchase, Thayer has been in control of the Company, making the day-to-day decisions.

On February 26, 2001—more than two years after the sale of the Company to Thayer—Michael Biritz, the Company's controller, allegedly informed the Company's chief financial officer, Jim Anderson, that from 1996 through 2000 he had been "forcing" entries on the Company's general ledger because information from the Company's proprietary seminar registration software system failed to balance. *See* Defendants' Motion, Ex. 3 ("2/28/01 Conversation with Mike Biritz"). Four audits had failed to detect these financial problems, two by Ernst & Young after Thayer purchased the Company and two by Baird, Kurtz & Dobson ("BKD"), the local accounting firm that audited the Company's financial statements in 1996 and 1997. Redler Affidavit at ¶ 6.[3]

Thayer conducted a lengthy investigation in the spring of 2001 after Biritz came forward, although defendants claim that the investigation failed to uncover any fraud by them. On March 29, 2001, Thay-

er sent defendants a demand letter seeking indemnification. Thayer claimed in the letter that the Company's financial statements grossly overstated amounts for prepaid expenses and profitability, understated tax liabilities, and thus did not fairly represent the true financial position of the Company. On June 27, 2001, counsel for defendants sent a letter to Thayer's counsel offering a $5 million settlement. On July 3, 2001, Thayer faxed a letter to defendants rejecting the offer as grossly inadequate, and stating that the requisite notice under the Agreement had been provided and Thayer was ready to sue. Later that afternoon, defendants filed their complaint in the District of Kansas. *See Fred Pryor, et al. v. Thayer/Patricof Education Holdings, L.L.C., et al.,* 01–CV–2327–GTV (D.Kan.) (hereinafter "Kansas Complaint"). Thayer filed this suit two weeks later on July 18, 2001. The Complaint in this Court alleges that the 1996, 1997, and 1998 financial statements did not represent the true financial health of the Company. Complaint at ¶¶ 29–31. Thayer claims that the financial statements overstated prepaid postage assets by more than $21 million. *Id.* at ¶ 44. Thayer alleges that defendants conducted a scheme to overstate earnings before interest, taxes, depreciation and amortization ("EBITDA"), and that the Company overstated its revenues by $11.2 million and overstated EBITDA by 100 percent. *Id.* at ¶¶ 29–31. According to Thayer, the Company's overall net worth from 1996 through 1998 was misstated by more than $23 million. *Id.* at ¶ 33.

Shortly after defendants received Thayer's Complaint, they amended the Kansas Complaint, which focuses on breach of con-

---

er than those reflected in the Financial Statements. And Section 3.27 of the Agreement warrants that the Company provided accurate copies of all material corporate records and that the Agreement and related materials did

not contain any untrue statement of material fact or omit any material fact. *See* Complaint Exhibit 1.

3. Biritz is a former auditor with BKD.

tract claims and seeks declaratory judgments pursuant to the Agreement. Specifically, defendants cite Section 8.1 of the Agreement, which lays out the indemnification remedies defendants agreed to provide for damages, including those arising out of misrepresentation or breach of contract. Defendants concede that they agreed to indemnify Thayer and the Company, but they claim that Section 8.1 does not allow Thayer to seek indemnification from the Company. Kansas Complaint at ¶ 28. Moreover, defendants assert that Section 8.6 of the Agreement places a cap on damages—"in no event shall the aggregate liability ... for breach of the representations and warranties exceed the sum of $15,000,000." *Id.* at ¶ 30. The cap does not apply, however, if there is intentional fraud. Agreement at ¶ 8.6. The Kansas Complaint also contends that Thayer's demand letters seeking indemnification from the Company and defendants are an attempt to get around the $15 million damages cap in the Agreement. Kansas Complaint at ¶¶ 56, 70–71. Defendants seek declaratory judgments to limit damages to $15 million and to declare that Thayer breached a number of provisions in the Agreement. *Id.* at ¶¶ 66–71. They also seek recovery of $2 million they invested in the Company after Thayer took over, allegedly in reliance on Thayer and Ernst & Young's audits for 1999 and 2000. *Id.* at ¶¶ 35–37. Defendants claim that their investment has been lost, and that Thayer and its directors breached their fiduciary duty to defendants, the minority shareholders.

### ANALYSIS

**I. *Defendants' Motion to Dismiss***

Defendants raise three issues supporting either dismissal or transfer. The heart of their argument is the request to transfer this case to Kansas, which is addressed in Section II below. Defendants also move to dismiss for improper venue and failure to join indispensable parties. The Court will address those issues first.

**■** Defendants claim that the District of Columbia is not the proper venue for this action, arguing that most of the operative events giving rise to Thayer's claims did not occur here. Under 28 U.S.C. ¶ 1391(b)(2), however, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." While defendants correctly assert that the financial statements were prepared and audited in Kansas, and that many of the witnesses and documents are in Kansas, it nonetheless remains the case that the parties negotiated the purchase in the District of Columbia, the defendants made essential oral and written representations here, the parties signed and executed the Recapitalization Agreement at issue here, and the exchange of cash and securities for Company stock occurred here. Thayer's Complaint is, at its core, based on the negotiation and execution of the Agreement, which occurred in the District of Columbia. It is impossible, therefore, to avoid the conclusion that a "substantial part" of the relevant events occurred here.

Moreover, Thayer correctly notes that four of the 17 counts asserted in its Complaint are brought pursuant to the Securities Exchange Act of 1934. Under that Act's liberal venue provision, an action may be brought in any district where one or more violations of the Act occurred, as well as in the district where the defendant is found, or in any district where the defendant has transacted business. 15 U.S.C. § 78a; *see also Poling v. Farrah*, 131 F.Supp.2d 191, 193 (D.D.C.2001) (venue proper not only in the district where the defendant is found or transacts business, but in any district where the transaction constituting the violation occurred; a

non-resident defendant's phone calls into the District of Columbia were sufficient to confer venue); *Berk v. Ascott Inv. Corp.*, 759 F.Supp. 245, 262 (E.D.Pa.1991); *Kramer v. Pittstown Point Landings Ltd.*, 637 F.Supp. 201, 204–05 (N.D.Ill.1986)

The Court finds that because Thayer is located in the District of Columbia and, more importantly, because the Agreement itself was negotiated and consummated here, venue is proper in the District of Columbia. The sale of the Company was finalized in Washington, where defendants allegedly made critical representations regarding the financial stability of the Company. Moreover, the financial statements at the heart of Thayer's action were attached to the Agreement and the representations in the financial statements incorporated into the Agreement. Agreement at ¶ 3.7. Because the negotiation and consummation of the Agreement occurred here, a "substantial part of the events ... giving rise to the claims occurred" here. These same events in the District of Columbia also plainly constitute acts alleged to violate the Securities Exchange Act of 1934. Venue is therefore proper in the District of Columbia.

■ Defendants also move to dismiss under Fed.R.Civ.P. 19 because Thayer failed to join indispensable parties. Defendants claim that Biritz and BKD, the Company's former accounting firm in Kansas, may be liable to Thayer or liable to defendants for contribution. Neither BKD nor Biritz appear to be subject to personal jurisdiction in the District of Columbia, and defendants thus urge that Thayer's complaint be dismissed so that BKD and Biritz can be joined in defendants' action in Kansas, where they are subject to personal jurisdiction.

Rule 19(a) provides that an absent person is necessary to the litigation if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

It is doubtful whether Thayer would even have a cause of action against BKD or Biritz for the claims asserted in the Complaint, as neither was a party to the Agreement or made the alleged misrepresentations. Indeed, Section 3.7 of the Agreement warrants that **defendants** will be strictly liable for any breach of warranties that the Company's financial statements were accurate. At most, BKD and Biritz may be joint-tortfeasors, not indispensable parties. *See, e.g., Scott Paper Co. v. Nat'l Cas. Co.*, 151 F.R.D. 577, 580 (E.D.Pa.1993) ("a third party is not a necessary or indispensable party to an action to determine the rights of other parties under a contract") (quoting *Special Jet Services v. Fed. Ins. Co.*, 83 F.R.D. 596, 599 (W.D.Pa.1979)).

■ Thayer correctly argues that joint tortfeasors are not indispensable parties under Rule 19. *See, e.g., Krieger v. Trane Co.*, 765 F.Supp. 756, 763 (D.D.C.1991) ("it is ... well-settled that joint tortfeasors are not indispensable parties"); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd.*, 647 F.2d 200, 207 (D.C.Cir.1981) (plaintiff "may sue as many or as few of the alleged wrongdoers as he chooses, those left out of the lawsuit, commentary underscores, are not indispensable parties"); 7 C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure,*

§ 1623, at 342 & n. 2 (2d. ed.1986). The Court can afford complete relief on Thayer's existing claims, as Rule 19 requires, against the parties Thayer has sued in the District of Columbia, even if Biritz and BKD are not joined. Curiously, although defendants assert that Biritz and BKD are indispensable parties in Thayer's suit here, they did not join them in the suit in Kansas, although both are subject to personal jurisdiction there. Indeed, counsel for defendants conceded at oral argument that BKD would also be an indispensable party in Kansas under the argument made here. Hence, defendants' assertions on indispensable parties ring hollow.

■ Nor should this action be dismissed because defendants cannot join Biritz or BKD for claims of contribution. Although the common law once allowed for a right of contribution in securities claims, that is no longer the case. In 1995, Congress passed the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4, which establishes a proportionate liability structure under which a party is liable only for the part of the judgment that corresponds to the percentage of its responsibility. Moreover, the right of contribution does not arise until the party seeking contribution has paid his or her share. Such a claim would arise **after** a judgment was rendered against the defendants here. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 200 (1st Cir.1999). The Court therefore finds that venue is proper in this Court and that Biritz and BKD are not indispensable parties to this action. Hence, the motion to dismiss is denied.

## II. *Transfer Under 28 U.S.C. § 1404(a)*

Ultimately, the primary issue before the Court is which forum is more appropriate under 28 U.S.C. § 1404(a) to hear the claims in Thayer's action—Kansas or the District of Columbia—giving due deference to Thayer's choice of forum. Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." Defendants make several arguments as to why transferring this case to the District of Kansas would be more convenient for the parties and witnesses, and would better serve the interests of justice. However, the Court finds those arguments, collectively and independently, unpersuasive.

### A. *The First–Filed Rule*

■ Defendants maintain initially that because they filed the Kansas action two weeks before Thayer filed its suit here, equitable considerations of comity and the efficient administration of justice warrant transferring Thayer's suit to Kansas. Defendants rely on "the first-filed rule" to support their position that either the two cases should be consolidated in Kansas or their suit in Kansas should proceed first. *See Washington Metro. Area Transit Authority v. Ragonese*, 617 F.2d 828, 830 (D.C.Cir.1980) ("where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first") (citations omitted). In *Ragonese*, the Court of Appeals reasoned that "[c]onsideration of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously." *Id.*

■ The first-filed rule is not rigidly or mechanically applied. *See, e.g., Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627 (D.C.Cir.1975); *Lewis v. National Football League*, 813 F.Supp. 1, 4 (D.D.C.1992). Indeed, in *Columbia Plaza* the Court of Appeals specifically warned

against a mechanical application of the rule:

> The opinions recognizing the rule have frequently contained a caveat that it should be ignored under some circumstances, and in a good many cases proceedings in an earlier-filed action have been stayed to enable the court later acquiring jurisdiction to proceed to judgment first. We do not regard an injunction favoring the first-filed action as a mandatory step in all instances because countervailing equitable considerations, where present, cannot be ignored.

525 F.2d at 627. Likewise, in *Lewis* the court stressed that the first-filed rule should not be applied rotely, particularly if a suit is filed as a preemptive strike to establish a preferred jurisdiction. *Lewis*, 813 F.Supp. at 4. There, the NFL sought a declaratory judgment in Minnesota that it did not violate antitrust laws and two days later three players filed suit here, claiming that the NFL rules at issue in the Minnesota case violated antitrust laws. The NFL moved to dismiss or transfer the second case to Minnesota. In denying the NFL's motion, the court observed that the first-filed rule "is not applied as universally as defendants would have this court believe," and stated that "the court must follow the D.C. Circuit's view that 'choice of forum cannot be suitably made by the mechanical application of the principle.'" *Id.* As to the preemptive nature of the NFL's declaratory judgment action, the court stated:

> One consideration in determining which action should proceed is whether it appears that the declaratory judgment action was filed in anticipation of litigation by the other party. Courts have held that such a preemptive strike should be disregarded in selecting the proper forum if equitable considerations so merit.

*Id.* (citations omitted). The court afforded considerable weight to the plaintiff's choice of forum:

> [P]erhaps most importantly, the plaintiffs have made the District of Columbia their choice of forum for this action in which they litigate harms allegedly done to them by the NFL defendants. That choice must be afforded proper weight and cannot be dismissed merely because defendants opt for a different forum.

*Id.* at 5.

As in *Lewis*, defendants here cannot simply rely on the first-filed rule. The suit in Kansas has all the makings of a preemptive strike—it was filed **seven hours** after Thayer rejected defendants' final settlement offer of $5 million and served notice of an intent to sue. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2nd Cir.1978) ("When the [first-filed] declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in plaintiffs' chosen forum."). Moreover, defendants' suit in Kansas is essentially a declaratory judgment action seeking to forestall or curtail Thayer's claims. Although defendants raise claims for breach of fiduciary duty, breach of contract, and tortious interference with contract, those claims boil down to the contention that Thayer was attempting to circumvent the $15 million damages cap in the Agreement and the corresponding request that the Kansas court limit any damages to the cap. *See* Agreement at ¶ 8.6. As aptly characterized by Thayer at oral argument, defendants' claims for damages are "dressed up defenses in anticipation of Thayer's suit," and the Kansas action is really "a suit about a suit."

Thayer has moved to dismiss the Kansas Complaint on the ground that it is a preemptive declaratory judgment action that fails to state a claim for more than $75,000. That motion is currently pending. A hearing on Thayer's motion to

dismiss the Kansas Complaint was held on April 1, 2002, but no ruling has yet been issued.[4] Hence, motions to dismiss are pending in both cases, and hearings have been held on both motions. No other substantial proceedings have transpired in either forum. Procedurally, then, there is no clear reason to favor the Kansas case even though it was "first-filed." *See Lewis v. National Football League*, 813 F.Supp. at 4. The preemptive and declaratory nature of defendants' Kansas action is a strong factor, moreover, counseling against rigid application of the first-filed rule. Under the circumstances, therefore, the Court does not believe transfer is warranted merely because defendants, when put on notice of Thayer's intended suit, filed a preemptive declaratory judgment action instead. Hence, analysis under the traditional forum non conveniens standards for transfer is necessary.

### B. *Standards Under § 1404(a)*

As a general matter, the burden is on the party seeking transfer to demonstrate that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor." *Armco Steel Co. v. CSX Corporation*, 790 F.Supp. 311, 323 (D.D.C.1991), quoting *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 569 F.Supp. 773, 774 (D.D.C. 1983). The moving party "bear[s] a heavy burden of establishing that plaintiffs' choice of forum is inappropriate." *Pain v. United Tech. Corp.*, 637 F.2d 775, 784 (D.C.Cir.1980). A court has broad discretion to determine where the proper balance lies and whether a case should be transferred. *Rhee Bros. Inc. v. Seoul Shik Poom, Inc.*, 869 F.Supp. 31, 33–34 (D.D.C. 1994).

The plaintiff's choice of a forum is "a paramount consideration" in any determination of a transfer request. *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F.Supp. 22, 25 (D.D.C.1997). The choice of forum is ordinarily afforded great deference, except when the plaintiff is a foreigner in that forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–256, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see also Gross v. Owen*, 221 F.2d 94, 95 (D.C.Cir.1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed ... unless the balance of convenience is strongly in favor of the defendant."); *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.*, 24 F.Supp.2d 66, 71 (D.D.C.1998). If the particular controversy has meaningful ties to the forum, and the plaintiff is a resident of that forum, plaintiff's choice of forum is given substantial deference. *The Wilderness Society v. Babbitt*, 104 F.Supp.2d 10, 12–13 (D.D.C. 2000).

Courts consider several factors in determining whether a case should be transferred under section 1404(a), including private and public interests:

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ..., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the govern-

---

**4.** At the hearing on Thayer's motion, Judge G.T. VanBebber stated: "[I]t seems to me that we almost need to await the outcome of the pending motions before the District of Colum-

bia District Court." Transcript of motion hearing in *Pryor v. Thayer/Patricof Education Holdings*, 01–CV–2327–GTV, April 1, 2002, at p. 5.

ing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Shapiro,* 24 F.Supp.2d at 71 (citing *Trout Unlimited v. Dep't of Agric.,* 944 F.Supp. 13, 16 (D.D.C.1996)). Other considerations include the availability of compulsory process to compel attendance of unwilling witnesses and the amount of expense for willing witnesses. *See Initiative and Referendum Institute v. United States Postal Service,* 154 F.Supp.2d 10, 14 (D.D.C.2001); *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 163–164 (D.D.C.1995); *Armco Steel Co.,* 790 F.Supp. at 323.

■ Although courts must balance these various factors to determine which forum is most appropriate, a threshold question under section 1404(a) is whether the action could have been brought in the transferee forum. *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Trout Unlimited,* 944 F.Supp. at 16. Here, that is not an issue. Venue could lie in Kansas for this action, as Thayer's claims arise out of the allegedly misstated financial statements of the Company, which is located in Kansas, and other events that transpired both in Kansas and in the District of Columbia. Indeed, defendants have filed their own suit in Kansas over the Agreement and the sale of the Company, involving the same nucleus of facts and most of the same parties.

### C. *Application of Transfer Criteria*

■ A motion to transfer under 28 U.S.C. § 1404(a) requires a factually intensive analysis to determine which forum is more appropriate. One important factor is the convenience of the parties and the witnesses.

Defendants claim that 37 of 53 potential witnesses live in the Kansas City metropolitan area, including the three defendants themselves. In contrast, only six witnesses—largely the directors of Thayer—live in the Washington, D.C., metropolitan area, while another ten, most of whom are associated with Thayer, live elsewhere in the country. However, other than the three defendants and Biritz, the remainder of defendants' list of witnesses is questionable. Twelve of the 37 "Kansas" witnesses are employees or former employees of the Company, with no mention of the topic or the importance of their alleged testimony. Although the Company's former chief financial officer, Jim Anderson, and the former chief executive officer, Lauren Wright, may be important witnesses,[5] defendants make no showing that Anderson and Wright would be unwilling to testify in the District of Columbia, and the Court assumes (absent any showing to the contrary) that Company officers and employees would voluntarily appear here.

Another nine witnesses are simply listed as employees of Ernst & Young, which audited the Company's 1998 and 1999 financial statements and conducted Thayer's investigation in 2001. Defendants count Clifford, the Ernst & Young engagement partner, as a "crucial witness" living in the Kansas City metropolitan area. Indeed, Clifford may be an important witness, as Biritz allegedly first told Clifford and Anderson that he had been forcing entries into the Company's books. But Clifford has informed Thayer that he would agree to testify voluntarily here. Declaration of Steve Clifford at ¶ 6. In fact, as an engagement partner, he often testifies on audits that Ernst & Young has conducted for its clients. The Court is also not convinced

---

**5.** For example, Anderson was with Steve Clifford, the lead partner for Ernst & Young,

when Biritz allegedly said that he was forcing entries into the Company's books.

that the eight other Ernst & Young employees listed by defendants would be unwilling to testify in the District of Columbia. If Clifford is willing to do so, then it is a fair assumption that subordinate accountants would as well. Defendants have provided no evidence to the contrary.

Similarly, four of the defendants' potential witnesses living in the Kansas City area work for BKD, the Company's former auditors. They, too, are not subject to subpoena by this Court. Because BKD issued unqualified audit letters for the Company's 1996 and 1997 financial statements, the testimony of these witnesses may be instructive. Once again, however, the record does not reflect that they would be unwilling to appear in the District of Columbia.

 In fact, there is little in the record concerning which of the 37 "Kansas" witnesses would testify voluntarily without having to be subpoenaed. To support its request for transfer under section 1404(a), a moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction. *See, e.g., First Health Group Corp. v. Sanderson Farms, Inc.,* 2000 WL 139474 at *2–3 (N.D.Ill.2000) (collecting cases) (party must specifically identify witnesses and general content of proposed testimony); *Midwest Precision Services, Inc. v. PTM Industries Corp.,* 574 F.Supp. 657, 659–660 (N.D.Ill.1983) (in connection with motions to transfer, courts should only

consider undisputed facts supported by affidavits, depositions, stipulations or other relevant documents). The court in *Shapiro* noted this need for a showing of witness unavailability:

> The Court concludes that defendants' asserted need for third-party witnesses residing in California does not overcome the other factors favoring plaintiff's chosen forum. . . . Defendants state that the potential witnesses residing in California are beyond the subpoena power of this Court, but they do not suggest that these witnesses will refuse to appear if the trial is held in the District of Columbia.

24 F.Supp.2d at 72.[6]

The witness defendants most convincingly claim would be unwilling to testify is Biritz. There may be good reason why Biritz would not be willing to testify in the District of Columbia. He has left the Company, and there is nothing in the record to indicate where he now works. Defendants claim that he is the most crucial witness for them because he could establish their defense, and that they have no control over him. Defendants' Reply at 2–3. Because he is not subject to personal jurisdiction here, defendants claim that only the District Court in Kansas can compel his critical testimony. The Court finds that the possible unavailability of Biritz for trial in the District of Columbia does favor defendants' request to transfer.

Defendants characterize Tom Sanford, the Company's former Director of Operations, as "the second most crucial witness"

---

**6.** *See also Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 1984 WL 3656 at *2 (D.D.C.1984) (transfer motion denied where insufficient showing of what testimony will cover or how it is relevant; "the emphasis must be on this showing rather than on numbers"); *Mason v. Smithkline Beecham Clinical Labs.,* 146 F.Supp.2d 1355, 1361–1362 (S.D.Fla.2001) (transfer motion based on unavailability of witnesses may be denied where movant does not show the witnesses would be unwilling to testify); *Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 148–149 (D.Del. 1985) (noting that when defendants do not indicate that their third-party witnesses will be unwilling to attend trial voluntarily, the court may "disregard the availability of compulsory process as a factor").

who also could not be compelled to testify in the District of Columbia. *Id.* Sanford was allegedly present when Biritz confessed to the forced entries. Defendants also contend that Sanford will explain the Company's complex banking software, including the receipt of seminar fees and treatment of transactions in the Company's accounting system. It seems that Sanford no longer works for the Company, although it is disputed whether he would willingly appear at trial in the District of Columbia. *See* Letter from Gerson Zweifach to the Court of 2/7/2002. Once again, defendants have not demonstrated through affidavits or declarations that Sanford would refuse to testify here. Indeed, there is uncontradicted evidence that Sanford is defendant Pryor's "best friend," which suggests that he would not decline to testify for defendants. *See* Plaintiffs' Response to Defendants' Supplemental Authority at 1. If Sanford has evidence that would support defendants, it is probable they could obtain his voluntary testimony in the District of Columbia. Hence, although the Court agrees that Sanford may be an important witness, it is not clear that he would refuse to appear here voluntarily. The mere inconvenience to Sanford from testifying in the District of Columbia does not warrant transfer.

▆▆▆ Overall, then, the convenience of witnesses and the availability of compulsory process may marginally favor defendants' motion to transfer. Biritz's testimony certainly could be important, and the Court will assume that he would not testify in the District of Columbia voluntarily. However, the analysis does not end there. Even witnesses unwilling to appear at trial can be subjected to videotape depositions that adequately capture their demeanor and credibility for purposes of a trial. *See, e.g., Dealtime.com, Ltd. v. McNulty,* 123 F.Supp.2d 750, 757 (S.D.N.Y.2000) (witness unavailability would "not tip the balance in favor of a transfer in light of the option of videotaping testimony of witnesses unwilling to travel"); *Estate of Rick v. Stevens,* 145 F.Supp.2d 1026, 1038 (N.D.Iowa 2001) (any inconvenience imposed by inability to subpoena witnesses to trial can be addressed through use of videotaped depositions); *Quezada v. Darden Restaurants, Inc.,* 139 F.Supp.2d 666, 668 (W.D.Pa. 2001). Although the likely absence of live testimony from Biritz may favor transfer somewhat, by itself it is not enough to trump the deference to which plaintiff's choice of forum is entitled.[7]

The Court finds that defendants have sufficiently established only that Biritz would be unlikely to testify voluntarily. Many of the other reputed "Kansas" witnesses appear to have little relevant evidence or would be merely cumulative, and defendants have not demonstrated that they would refuse to appear here. On the other hand, Thayer is located in the District of Columbia, and three of Thayer's directors reside in this area. Their convenience and that of several other witnesses with relevant information concerning the disputed representations and transactions must also be taken into account, and balanced against the inconvenience to the three defendants and others if the case is not transferred. When all is said and done, the number of **important** "Kansas-based" witnesses may not be much greater than the number of important "Washington-based" witnesses, and defendants have not met their burden of establishing that

---

7. Defendants argue that a videotape deposition is generally taken months before trial, and that a witness in that situation would not have the benefit of knowing and reacting to what had been said previously at trial under counsel's guidance. The Court is mindful of this concern, and will consider special procedures and timing for videotape depositions as appropriate.

the Kansas-based witnesses (other than Biritz) are unlikely to appear here voluntarily.[8]

Defendants assert that because the alleged accounting fraud occurred in Kansas, the factual circumstances underlying Thayer's case are centered there, thus warranting transfer. The Court disagrees. Most directly at issue in Thayer's Complaint are the representations made and allegedly relied on in the District of Columbia. Most of the negotiations for the purchase of the Company took place at Thayer's offices in the District of Columbia, Temple Declaration at ¶ 2, and misrepresentations were allegedly made in the financial statements attached to the Agreement executed in the District of Columbia, upon which Thayer relied in deciding to purchase the Company. Defendants also allegedly made certain oral representations regarding the financial viability of the Company in Washington in December 1998, just weeks before the parties consummated the sale. Moreover, at the closing in January 1999, defendants made further written representations when they attached the disputed financial statements to the Agreement, thus warranting the financial health of the Company. *See* Agreement, p. v, List of Schedules, Financial Statements. The transaction at the heart of this action and the actual exchange of the Company's stock for $80 million thus occurred in the District of Columbia. *See* Temple Declaration at ¶ 2.

Defendants bear a "heavy burden" in asking this Court to overturn plaintiffs' choice of forum. *See Pain v. United Tech. Corp.*, 637 F.2d at 784. The Court finds that the events at issue—particularly the entry into the Agreement and the accompanying representations by defendants—have a significant connection with this forum. *See Shapiro*, 24 F.Supp.2d at 70 (the rule that a court must accord great deference to a plaintiff's choice of forum "is particularly true where … plaintiff is a resident of the chosen forum and the activities forming the basis of the suit have a significant connection with the forum"); *accord Nichols v. United States Bureau of Prisons*, 895 F.Supp. 6, 8 (D.D.C.1995).[9]

Indeed, defendants chose to travel to the District of Columbia to finalize the sale of the Company. As stated in *Sheraton*, "[t]he Court is not unsympathetic to the defendant's argument that it will be a burden to defend the litigation in Washington, D.C.; however, the defendant should have considered that possibility before it chose to do business in Washington, D.C." 984 F.Supp. at 26–27. Every witness involved with the representations made at the time of the sale of the Company—defendants and Thayer's personnel—is available to appear here without requiring a subpoena. The possible unavailability of Biritz, or even others, is simply not enough to over-

---

**8.** Defendants further claim that George Jenkins and Salem Shuckman, directors of Thayer and party defendants in the suit in Kansas, are not subject to personal jurisdiction in the District of Columbia because Jenkins lives in Pennsylvania and Shuckman lives in New York. Again, defendants have not made any showing that Jenkins and Schuckman would decline to appear voluntarily in this action in the District of Columbia. Indeed, because they have much to gain from the successful prosecution of Thayer's suit, it strains creduli-

ty to believe they would not be willing to appear in this action.

**9.** Thayer correctly notes that the presumption in favor of a plaintiff's choice of forum is even stronger in cases arising under the federal securities laws. The liberal venue provision "represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue." *SEC v. Elec. Warehouse Inc.*, 689 F.Supp. 53, 74 (D.Conn.1988), *aff'd*, 891 F.2d 457 (2nd Cir.1989).

come Thayer's choice of forum. *See Shapiro*, 24 F.Supp.2d at 72; *see also Pain*, 637 F.2d at 783 ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

Defendants also assert that various important documents are located in Kansas, which they believe further favors transfer. The Court is not persuaded that the location of these documents warrants transfer. To begin with, the documents can easily be transported to Washington. In fact, many will be provided through discovery to Thayer's counsel here in Washington. Nor is the Court persuaded that documents at Firstar Bank will be critical at trial; nothing to date suggests that the alleged fraud will crystalize in Firstar documents. Moreover, the location of documents, given modern technology, is less important in determining the convenience of the parties. *See Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F.Supp. 525, 527 (D.D.C.1987) ("No matter where the litigation proceeds, these materials will have to be photocopied and shipped to Eastern's lawyers who live and work in the District area and to ALPA's lawyers who likewise live and work in D.C."); *Coker v. Bank of America*, 984 F.Supp. 757, 766 (S.D.N.Y. 1997) ("The location of documents factor is neutral" because "in today's era of photocopying, fax machines and Federal Express, [the] documents could easily be sent to New York."); *Continental Airlines v. American Airlines*, 805 F.Supp. 1392, 1397

(S.D.Tex.1992) ("documents can be produced and examined anywhere for discovery purposes").

One last "public" factor in determining whether to transfer is which court can better apply the relevant state law. *See Trout Unlimited*, 944 F.Supp. at 19 (interests of justice "are best served by having a case decided by the federal court in the state whose laws govern the interests at stake"). Defendants underscore the fact that Section 10.7 of the Agreement requires the application of Kansas state law, and contend that federal courts in Kansas have more familiarity with that state's law than do courts in the District of Columbia. Of the 17 counts in Thayer's Complaint, defendants note that six will be governed by Kansas law, and two more are based directly on Kansas blue sky laws.

Federal courts today, however, are often called upon to apply state laws, especially on common legal issues such as breach of contract, misrepresentation, fraud, indemnification and punitive damages, all of which Thayer raises in its Complaint. *See Coker v. Bank of America*, 984 F.Supp. 757, 766 (S.D.N.Y.1997) ("[T]he 'fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer ... especially in an instance such as this where no complex questions of foreign law are involved.'") (ellipses in original); *Frazier v. Comm. Credit Equip. Corp.*, 755 F.Supp. 163, 168–69 (S.D.Miss.1991); *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923, 932 (W.D.Mo.1985).[10] Indeed, four of the

---

**10.** Defendants' reliance on *Trout Unlimited*, 944 F.Supp. at 19, does not aid the analysis. There, the court found that Colorado law might apply, thus warranting transfer. However, the case involved an easement issued by the Forest Service over public land in Colorado to create a dam and reservoir and whether a by-pass flow would be required to support a natural fishery. Because the outcome would affect the land, water, and wildlife of Colorado, the court transferred the case to allow a Colorado court to address water rights, land use, and state environmental issues under Colorado law. The unique facts and issues directly impacting the proposed transferee jurisdiction (Colorado) warranted transfer. This case, in contrast, presents no such circumstances or concerns.

counts allege violations of federal securities law, which any federal court is able to apply. The Court concludes, therefore, that this factor does not strongly favor transfer to Kansas.

Finally, each side cites case law on whether an action should be transferred when a contract has been executed in one jurisdiction while the property at issue is located in another jurisdiction. *Compare Cavanaugh v. Bluebeard's Castle, Inc.*, 83 F.Supp.2d 284 (D.Conn.1999), *with Hanes Co., Inc. v. Ronson*, 712 F.Supp. 1223, 1230 (M.D.N.C.1988). In *Cavanaugh*, plaintiffs were Connecticut residents, the business at issue was located in the Virgin Islands, and promissory notes were executed in Connecticut, but defendants received the funds in the Virgin Islands. The plaintiffs sought return of the money advanced to the defendants. Although the district court granted the motion to transfer to the Virgin Islands, it based its decision primarily on the fact that **plaintiffs** had filed two related lawsuits in the Virgin Islands which could be consolidated upon transfer. 83 F.Supp.2d at 288. *Cavanaugh* is thus different from this case, in which the plaintiffs reside in the District of Columbia and the entire transaction for the purchase of the Company occurred here, and no related case has been filed in Kansas by plaintiffs.

The facts in *Hanes Co.* are closer to this case. There, plaintiffs were residents of North Carolina who purchased manufacturing assets located in South Carolina through negotiations in North Carolina. As here, a dispute arose over the value of what was purchased, and plaintiffs, like Thayer, brought suit raising claims for fraud, misrepresentation, and breach of contract. The defendants in *Hanes Co.*, like the defendants here, moved to transfer because the business was located in South Carolina and more witnesses could be subpoenaed there. The court denied

transfer, taking into account that "it appears that in large measure the contracts were negotiated and executed in North Carolina." 712 F.Supp. at 1231; *see also Etienne v. Wolverine Tube, Inc.*, 12 F.Supp.2d 1173, 1182 (D.Kan.1998). ("Kansas retains an interest in the enforcement of contracts with Kansas residents negotiated and executed in this state."); *Galli v. Travelhost, Inc.*, 603 F.Supp. 1260, 1262 (D.Nev.1985) (where "contract at issue ... was negotiated, signed, and executed" in Nevada, court refused to transfer to Texas).

## *CONCLUSION*

Defendants' motion to dismiss or, in the alternative, to transfer is hereby denied. Venue is appropriate in this Court, and Thayer has not failed to join any indispensable parties. The alleged misrepresentations were made in the District of Columbia, and the parties finalized and executed the Agreement here and exchanged money for stock here. Although the Company itself is located in Kansas and some witnesses reside beyond the subpoena range of this Court, defendants have not demonstrated that those witnesses (other than Biritz) will decline to appear here voluntarily, and thus defendants have not met their heavy burden of establishing that Thayer's choice of forum should be disturbed. A separate order accompanies this Memorandum Opinion.

## *ORDER*

Upon consideration of Defendants' Motion to Dismiss, or in the alternative, to Transfer, the memoranda and arguments of the parties, and the entire record herein, it is hereby

ORDERED that Defendants' motion be and hereby is DENIED for the reasons stated in the Court's Memorandum Opinion issued on this date; and it is further

**38**

ORDERED that a scheduling conference is set for May 14, 2002, at 9:15 a.m. in Courtroom 21. Counsel who attend the scheduling conference must be sufficiently familiar with the case to answer any questions that arise. Counsel shall confer in accordance with Rule 16.3(a) of the Local Civil Rules and Fed.R.Civ.P. 26(f), and shall submit their Joint Rule 16.3 Report addressing the topics listed in Local Civil Rule 16.3(c) no later than 14 days following their conference (see Local Civil Rule 16.3(d)), and in no event less than three business days before the scheduling conference.